**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In Re | ) | Chapter 11 |
| | ) | |
| TAVERN ON THE GREEN | ) | Case No. 09-15450 (ALG) |
| LIMITED PARTNERSHIP, *et al.* | ) | Case No. 09-15448 (ALG) |
| | ) | |
| | ) | Jointly Administered. |
| Debtors. | ) | |
| | ) | |

## INTERIM ORDER APPROVING DEBTORS' MOTION UNDER 11 U.S.C. § 364(C) FOR APPROVAL TO EXECUTE DIP FINANCE AGREEMENT WITH SECURED CREDITOR TD BANK

Upon consideration of the Motion (the "Financing Motion") dated October 8, 2009, filed in the above-captioned jointly administered bankruptcy cases (the "Bankruptcy Cases") of Tavern on the Green Limited Partnership ("TOTG") and Leroy Adventures, Inc., the debtors and debtors-in-possession (the "Debtors"), for approval to execute an emergency DIP finance agreement, pursuant to 11 U.S.C. § 364, on behalf of debtor TOTG with TD Bank, N.A. ("TD Bank or Secured Creditor"); and hearings having been held on October 9, 2009 and October 15, 2009; the evidence and the arguments of counsel; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM**

**HEARINGS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT**

**AND CONCLUSIONS OF LAW:**

A.     **The Petition Date.**  On September 9, 2009 (the "Petition Date") the Debtors commenced these cases (the "Bankruptcy Cases") by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, the Debtors have remained in possession and control of their assets as debtors-in-possession

pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.** **Jurisdiction and Venue.** This Court has jurisdiction to hear the Financing Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Financing Motion constitutes a core proceeding under 28 U.S.C. § 157(b). Venue for the Bankruptcy Cases and proceedings on the Financing Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.** **Committee Formations.** On September 17, 2009, the United States Trustee (the "US Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed in the Bankruptcy Cases.

**D.** **Notice.** Notice of the Interim Hearing (as defined herein) and the relief requested in the Financing Motion has been provided by the Debtors as set forth in the Financing Motion. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Financing Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001(b), and applicable local rules.

**E.** **The Pre-Petition Loan Agreement.** TOTG, as borrower, and TD Bank entered into a certain Amended and Restated Loan and Security Agreement, dated as of September 16, 2008 (as subsequently amended, the "Loan Agreement"). The Loan Agreement and all notes, including (i) that certain Revolving Credit Note from TOTG in favor of Secured Creditor in the principal amount of $2,900,000.00 (the "Revolving Credit Note"); (ii) that certain term note from TOTG in favor of Secured Creditor in the principal amount of $1,100,00.00 (the "Term Note"); and (iii) that certain mortgage note from TOTG in favor of Secured Creditor in the principal amount of $2,000,000.00 (the "Mortgage Note", and together with the Revolving Credit Note

and the Term Note, the "Notes"), facility letters, line letters, security agreements, assignments, pledges, guaranties, forbearance agreements, or other loan documents, and other instruments or documents executed in connection therewith or related thereto shall be referred to herein as the "Pre-Petition Claim Documents." True and correct copies of the Pre-Petition Claim Documents are retained by Secured Creditor and the Debtors, and will be available to interested parties upon request. Without prejudice to the rights of the Committee as set forth below, the Debtors agree that the Pre-Petition Claim Documents are genuine, valid, existing, and legally enforceable, and the Committee reserves all rights to object thereto and challenge, among other things, the extent and validity of the Secured Creditor's liens, claims and interests under the Pre-Petition Claim Documents or otherwise.

F. **The Pre-Petition Liens.** Pursuant to the Pre-Petition Claim Documents and applicable law, the Debtors agree (without prejudice and subject to the rights of the Committee set forth below) that Secured Creditor holds valid, enforceable, and allowable claims against the Debtors, as of the Petition Date, in an aggregate amount equal to at least $5,750,000.00 in unpaid principal under the Notes and a $250,000.00 commitment remaining on the Revolving Credit Note, together with accrued but unpaid interest, plus any and all other fees, cost, expenses, charges, other debts or obligations of the Debtors to Secured Creditor under the Pre-Petition Claim Documents and applicable law (including all professional fees that are chargeable or reimbursable under the Pre-Petition Claim Documents now or hereafter due under the Pre-Petition Claim Documents) (collectively, the "Pre-Petition Claims").[1] Without prejudice and

---

[1] The amounts set forth herein are provided by the Debtors and have not been adopted by Secured Creditor. Secured Creditor may rely on this filing as if it were a proof of claim, and in such an instance, the Debtors shall acknowledge the claims set forth herein, as if they were submitted by way of a proof of claim. Secured Creditor

Continued on following page

subject to the rights of the Committee set forth below, the Debtors agree that Secured Creditor holds perfected first priority liens and security interests (the "Liens") in, inter alia, substantially all of the assets of the Debtors as more fully described in the Pre-Petition Claim Documents including, without limitation, real estate, all accounts, chattel paper, documents, instruments, inventory, general intangibles, equipment, fixtures, deposit accounts, goods, letter-of-credit rights, and investment property, and all proceeds and rights to payment with respect thereto (collectively, the "Collateral") as security for the payment and performance of the Debtors' obligations under the Pre-Petition Claim Documents. Furthermore, pursuant to that certain Amended and Restated Security Agreement, dated as of September 16, 2008, between debtor Leroy Adventures, Inc., Flash LeRoy, Inc. and The Maxwell's Plum Limited Partnership, each as a guarantor, in favor of Secured Creditor (the "Guaranty"), the Debtors agree (without prejudice and subject to the rights of the Committee set forth below) that Secured Creditor holds perfected first priority liens and security interests in, inter alia, substantially all of the assets of the debtor Leroy Adventures, Inc. as more fully described in the Guaranty including, without limitation, all accounts, inventory, general intangibles, documents of title, chattel paper, equipment, deposit accounts, commercial tort claims, investment property, fixtures, goods, instruments, letter-of-credit rights, accounts receivable, intellectual property rights (if any) and real estate, and all proceeds and rights to payment with respect thereto, as security for the payment and performance of the Debtors' obligations under the Pre-Petition Claim Documents.

_____

Continued from previous page

shall have the right, but not the obligation, to subsequently file a proof of claim with the amounts that it shows as due and owing on the Petition Date. Secured Creditor and the Committee each reserve all of their respective rights in connection with the claim amount.

**G.** **Enforceability of Obligations Arising Under Pre-Petition Claim Documents.**

The Debtors individually and on behalf of the Debtors' bankruptcy estates ("Bankruptcy Estates")[2] admit, agree and stipulate that, without prejudice to the rights of the Committee to object and challenge, among other things, the amount, extent and validity of TD Bank's liens, claims and interests under the Pre-Petition Claim Documents or otherwise, that the obligations of the Debtors under the Pre-Petition Claim Documents are (a) legal, valid, binding, and enforceable against each of the Debtors and the Bankruptcy Estates, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. Without prejudice and subject to the rights of the Committee set forth below, the Debtors do not have, hereby forever release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Pre-Petition Claims, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, against TD Bank and its respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

**H.** **Enforceability of Liens and Security Interests Granted Pursuant to the Pre-Petition Claim Documents.** The Debtors individually and on behalf of the Bankruptcy Estates admit, agree and stipulate that, without prejudice to the rights of the Committee to object and challenge, among other things, the amount, extent and validity of TD Bank's liens, claims and interests under the Pre-Petition Claim Documents or otherwise, that the Liens are legal, valid,

---

[2] Use of the term "Bankruptcy Estates" in this Order shall not prejudice any of the rights or reservations of the Committee as set forth herein.

enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the date hereof, there are no liens or security interests having priority over the Liens.

I.    **Adequate Protection for Use of Cash Collateral.**  Pursuant to interim orders entered by the Bankruptcy Court authorizing the Debtors to use the cash collateral of TD Bank, TD Bank holds replacement liens on all post-petition assets and proceeds thereof, excluding all avoidance causes of actions under Chapter 5 of the Bankruptcy Code, having the same validity, extent, and priority that the TD Bank possessed as to said Liens on the Petition Date (the "Adequate Protection Replacement Liens").  Without prejudice to the rights of the Committee to object and challenge, among other things, the amount, extent and validity of TD Bank's liens, claims and interests under the Pre-Petition Claim Documents or otherwise, the Adequate Protection Replacement Liens are legal, valid, enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the date hereof, there are no liens or security interests having priority over the Adequate Protection Replacement Liens and no other person or entity asserts an interest in the Debtors' cash collateral.

J.    **Need for Post-Petition Financing.**  An immediate need exists for the Debtors to obtain funds in order to continue operations and to administer and preserve the value of the Bankruptcy Estates.  The ability of the Debtors to finance their operations, to preserve and maintain the value of their assets and maximize the return for all creditors requires the

availability of working capital under the terms of the debtor-in-possession financing transaction described in the term sheet attached hereto as Exhibit A (the "Term Sheet")[3]. The debtor-in-possession financing transaction described in the Term Sheet shall hereinafter be referred to as the "DIP Facility". The DIP Facility and the documents and instruments governing the DIP Facility (the "DIP Financing Documents").[4] In the absence of the availability of such funds in accordance with the terms hereof and the Term Sheet, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, the Bankruptcy Estates, their creditors and equity holders would occur.

**K.** **No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense; or (b) credit with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b), in each case, on more favorable terms and conditions than those set forth in the Term Sheet and this Interim Order.

**L.** **Use of Proceeds of the DIP Facility.** Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in each case in a manner consistent with the Term Sheet, the DIP Financing Documents, and this Interim Order; provided that not more than $30,000 of the proceeds of the DIP Facility ("Investigation Fee Cap") may be used by the Committee or any other official committee

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet.

[4] A copy of the DIP Financing Agreement will be filed with this Court upon execution thereof.

appointed in these Cases, to investigate the Liens and the claims of, or against, TD Bank (the "Investigation").

**M.** **Business Judgment and Good Faith Pursuant to Section 364(e).** The terms and conditions of the DIP Facility, as set forth in the DIP Financing Documents, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances; (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arm's length between the Debtors and TD Bank. TD Bank has indicated its willingness to provide financing to the Debtors pursuant to the DIP Financing Documents. The funds to be extended under the DIP Facility will be extended by TD Bank in good faith, and for valid business purposes and uses by the Debtors, and, as a consequence, TD Bank is entitled to the protection and benefits afforded by section 364(e) of the Bankruptcy Code. The DIP Superpriority Claim (as defined herein), the DIP Liens (as defined herein) and other protections granted pursuant to this Interim Order (and the Final DIP Order), the DIP Financing Documents and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final DIP Order, as provided in section 364(e) of the Bankruptcy Code.

**N.** **Relief Essential; Best Interests.** The relief requested in the Financing Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and management and preservation of the Bankruptcy Estates. It is in the best interests of the Bankruptcy Estates that the Debtors be allowed to obtain credit pursuant to the DIP Facility and the DIP Financing Documents.

**O.      Entry of Interim Order.**  For the reasons stated above, the Debtors have requested and are entitled to immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE,** upon the Financing Motion and the record before this Court with respect to the Financing Motion, including the record made during the Interim Hearings, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      **Motion Granted.**  The Financing Motion is granted to the extent and in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Financing Motion with respect to the entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein (but subject to all reservation of rights included herein), if any, are hereby denied and overruled.

2.      **DIP Financing Documents.**

(a)      **Approval of Entry into the DIP Financing Documents.**  The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and to incur and to perform in accordance therewith, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors in connection with the DIP Facility and the creation and perfection of the liens and security interests granted pursuant to the DIP Financing Documents (the "DIP Liens" and collectively with the Liens and the Adequate Protection Replacement Liens, the "TD Bank Liens") described in and provided for by this Interim Order and the DIP Financing Documents.  The Debtors are hereby authorized and directed to do and perform all acts, satisfy all obligations, and to pay all principal, interest, fees, expenses and other

amounts described in the DIP Financing Documents as such become due (collectively with all other obligations under and as defined in the DIP Financing Documents, the "DIP Obligations"), which amounts shall not otherwise be subject to further approval of this Court. Upon execution and delivery, the DIP Financing Documents shall represent valid and binding obligations of the Debtors in accordance with their terms enforceable against the Debtors and the Bankruptcy Estates.

(b) **Authorization to Borrow on an Interim Basis.** Debtor TOTG is immediately authorized to borrow between the date of entry of this Interim Order and the date of the Final DIP Hearing (as described herein), (the "Interim Period") subject to, and in accordance with, the terms and conditions of the DIP Financing Documents, up to the amount of $262,000 (which amount includes and is not in addition to the amount advanced by TD Bank on October 14, 2009 to TOTG) plus any accrued and unpaid DIP Fees and Expenses (the "Interim DIP Facility Amount").

(c) **Use of the Interim DIP Facility Amount.** The Interim DIP Facility Amount advanced by TD Bank to TOTG thereafter shall be used by the Debtors in the amounts and for the purposes identified in the Interim Period Budget to (i) pay related transaction costs, fees and expenses of the DIP Facility in accordance with the DIP Financing Documents; and (ii) fund ongoing working capital needs of the Debtors, including payments of administrative expenses incurred by the Debtors. All advances by TD Bank to the Debtors of the Interim Facility Amount during the Interim Period, shall be subject to the budget that is attached to the Financing Motion (the "Interim Period Budget").

(d) **Limited Use of Cash Collateral**. Proceeds of the Interim DIP Facility Amount advanced by TD Bank to TOTG shall constitute cash collateral of the Debtors. During

the Interim Period, the Debtors shall only use cash collateral in the amounts and for the purposes identified in the Interim Period Budget. The use of the proceeds of the Interim DIP Facility Amount advanced by TD Bank to TOTG and the above-referenced cash collateral shall be subject to the terms and conditions of the Interim Order Granting Debtors Authority to Use Cash Collateral, entered on October 8, 2009 [Dkt. No.41].

(e)     **Conditions Precedent.** During the Interim Period, TD Bank shall have no obligation to make any loan or any other financial accommodations under the DIP Financing Documents unless the conditions precedent to make such loans or financial accommodations under the DIP Financing Documents have been satisfied in full or waived in accordance with the DIP Financing Documents. For avoidance of doubt, no loans or other extensions of credit will be available to the Debtors, (i) unless TD Bank and the Debtors execute and deliver the DIP Financing Documents, and (ii) in excess of the Interim DIP Facility Amount, until entry of a final order authorizing the Borrowers to borrow the full amount of the DIP Facility in accordance with the DIP Financing Documents (the "Final DIP Order").

(f)     **DIP Superpriority Claim and DIP Liens.** Provided that Secured Creditor advances the Interim DIP Facility Amount, effective immediately upon the entry of this Interim Order, and subject to the terms of the DIP Financing Documents, TD Bank, as adequate protection and security for the obligations of the Debtors under the DIP Facility and the DIP Financing Documents, is hereby granted (x) a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code superior to any and all administrative expenses in the Bankruptcy Cases, including without limitation, any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b) 506(c), 507(a), 507(b) and

726 of the Bankruptcy Code (except for any allowed administrative claim of Flatiron Capital, Division of Wells Fargo Bank, N.A.) (the "DIP Superpriority Claim") and (y) the following security interests and liens, all of which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable (collectively, the "DIP Liens"):

(I)     a first priority security interest and lien, pursuant to section 364(d) of the Bankruptcy Code, on all property of the Bankruptcy Estates, which includes, without limitation, all now owned or hereafter acquired property of the Debtors and the Bankruptcy Estates including, without limitation, all unencumbered cash, any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, tradenames, other intellectual property (if any), equity interests and proceeds of the foregoing, wherever located and which shall also include proceeds of the Debtors' and the Bankruptcy Estates' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and other avoidance or similar actions under the Bankruptcy Code or similar state law, whether received by judgment, settlement or otherwise, subject only to valid and unavoidable liens that are in existence as of the date hereof and that under applicable law are senior to, and have not been subordinated to, the liens and security interests of TD Bank (collectively, "Prior Liens");

(II)     a first priority security interest and lien, pursuant to section 364(c)(2) of the Bankruptcy Code, on all unencumbered property of the Debtors and the Bankruptcy Estates; and

(III)    a second priority security interest and lien, pursuant to section 364(c)(3), on all property of Debtors that is subject to Prior Liens perfected as of the date hereof or Prior Liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, if any.

The foregoing property described in paragraphs (I), (II) and (III) above shall hereinafter be referred to as the "DIP Collateral"; and, collectively with the Collateral, the "TD Bank Collateral." Notwithstanding anything contained herein, any successful challenge by the Committee of the validity, extent, priority, perfection or enforceability of the Pre-Petition Claim Documents, the Pre-Petition Claims, the Liens, the Collateral, or the Guaranty, shall have no effect on or with respect to the DIP Superpriority Claim or DIP Liens. Furthermore, notwithstanding any other provision in this order, the DIP Superpriority Liens shall not prime the allowed statutory first liens of the City of New York and its agencies under the New York City Administrative Code Section 11-301 and 11 U.S.C. section 503(b)(1)(B)(i), if any.

(g)    **Authorization to Perfect Liens.** TD Bank shall be and hereby is authorized to take any action it deems necessary or appropriate to perfect the liens and security interests granted to TD Bank pursuant to the DIP Financing Documents and this Interim Order, including but not limited to filing financing statements, all of which shall be deemed to have been filed on the date of entry of this Order.

(i)    **Carve-Out**. The claims and liens granted hereunder to TD Bank, the DIP Liens and any claims or liens ranking *pari passu* with or junior in priority to such claims shall be subject to the Carve-Out (whether or not TD Bank is paid in part or in full with respect to any pre or post-petition loans made to the Debtors). For purposes of this Order, the term "Carve-Out" shall mean (i) the unpaid fees and interest due and payable to the Clerk of the Bankruptcy Court

and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $40,000; and (iii) the amount of $450,000 for fees and expenses of Debtors' professionals and the amount of $300,000 for fees and expenses of the Committee's professionals and members (collectively, the "Professionals") for the period from the Petition Date through the Maturity Date; in an aggregate amount not to exceed $750,000. Other than with respect to the Investigation and only up to the Investigation Fee Cap, no portion of the Interim Facility Amount or the cash collateral of TD Bank may be used to fund or pay professional fees in connection with a challenge of the amount, validity, perfection, priority or enforceability of, or assert any defenses counterclaim or offset to the Pre-Petition Claim Documents, Pre-Petition Claims, the Liens or the Adequate Protection Replacement Lien or any other claims, security interests and liens of TD Bank or to otherwise initiate or prosecute any claim or action against TD Bank.

(j)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to (i) permit the Debtors to grant the DIP Liens and to incur all liabilities and obligations to TD Bank under and in connection with the DIP Financing Documents, the DIP Facility and this Interim Order, and (ii) authorize TD Bank to retain and apply payments hereunder.

3.     **DIP Lien Priority and DIP Collateral.** The DIP Liens shall have the priorities set forth in this Interim Order and, except as may otherwise be expressly set forth herein, shall in each and every instance, subject to the Carve-Out, be first priority senior liens. The DIP Liens shall secure all of the Debtors' obligations under the DIP Financing Documents and the DIP obligations. Subject to the Carve-Out, the DIP Liens shall not be made subject to or *pari passu*

with any lien or security interest by any court order heretofore or hereafter entered in the Bankruptcy Cases and shall be valid and enforceable against any trustee appointed in the Bankruptcy Cases, upon the conversion of any of any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of any of the Bankruptcy Cases. Without prejudice to the rights of the Committee to object and challenge, among other things, the amount, extent and validity of TD Bank's liens, claims and interests under the Pre-Petition Claim Documents or otherwise, the TD Bank Liens, the DIP Obligations and the Pre-Petition Claims and any proceeds, products, offspring or profits of any of the foregoing, shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code.

4. **Maturity**. The DIP Facility will mature (the "Maturity Date") upon the earliest to occur of (i) (A) with respect to the Term DIP Facility the stated maturity which shall be January 5, 2010, except that $175,000 of the Term DIP Facility shall be due and payable to TD Bank on December 16, 2009, and (B) with respect to the Roll-Up Facility the stated maturity which shall be January 5, 2010, (ii) October 30, 2009, if the Final Order has not been entered, (iii) the effective date of a plan of reorganization, (iv) the entry of an order pursuant to section 363 of the Bankruptcy Code approving sale of substantially all of the assets of the Debtors, (v) conversion of the cases to a Chapter 7 or (vi) any other Event of Default under the DIP Financing Documents, this Interim Order or the Final Order. All obligations and liabilities of the Debtors to TD Bank that remain outstanding or are in existence on the last day of the term of the DIP Facility shall be due and payable on the last day of the Maturity Date.

5. **Enforceable Obligations**. Without prejudice to the rights of the Committee to object and challenge, among other things, the amount, extent and validity of TD Bank's liens, claims and interests under the Pre-Petition Claim Documents or otherwise, the DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, the Bankruptcy Estates and any successors thereto and their creditors, in accordance with their terms.

6. **Use of Interim Facility Amount**. From and after the date hereof, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Documents, this Interim Order and the Interim Period Budget.

7. **Superpriority Administrative Claim Status.** The DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute the DIP Superpriority Claim and be payable from and have recourse to all DIP Collateral. Other than as provided in the DIP Financing Documents and this Interim Order with respect to any Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b) 506(c), 507(a), 507(b) and 726, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Superpriority Claims or the DIP Obligations, or with any other claims of TD Bank arising hereunder.

8. **Authorization to Use Cash Collateral and Proceeds of DIP Financing Documents**. Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Financing Documents, and in a manner consistent with the Interim Period Budget (as the

same may be modified, supplemented or updated from time to time with the agreement of TD Bank and the Committee consistent with the terms and conditions of the DIP Financing Documents), TOTG is authorized to use the advances under the DIP Financing Documents. TOTG's right to use the extensions of credit under the DIP Financing Documents shall terminate upon the earlier of (i) the occurrence of an Event of Default in accordance with the provisions of paragraph 19 hereof, or (ii) upon the occurrence of the Maturity Date. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or the Bankruptcy Estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted under the DIP Facility and the DIP Financing Documents (subject to any required court approval).

9. **Monitoring of Collateral.** TD Bank shall be permitted to retain consultants and financial advisors at the expense of the Debtors (subject to the rights of all parties in interest to object to the amounts thereof as set forth in paragraph 21 herein), and TD Bank and its consultants and advisors shall be given reasonable access to the Collateral and the DIP Collateral.

10. **Financial Reporting.** The Debtors shall provide TD Bank with all financial and other reporting in full compliance with the Pre-Petition Claim Documents and the DIP Financing Documents.

11. **DIP and Adequate Protection Replacement Lien Perfection**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Lien or to entitle

the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, TD Bank may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of this Interim Order. The Debtors shall execute and deliver to TD Bank all such financing statements, mortgages, security agreements, notices and other documents as TD Bank may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens. TD Bank, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry or recorder of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. To the extent that TD Bank is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any of the Pre-Petition Claim Documents, TD Bank shall also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and the other DIP Financing Documents.

12.     **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or any official committee

including, without limitation, the Committee, or shall affect the right of TD Bank to object to the allowance and payment of such fees and expenses.

13. **Waiver of Claims and Causes of Action.** Without prejudice to the rights of the Committee to object to and challenge, among other things, the amount, extent and validity of TD Bank's liens, claims and interests under the Pre-Petition Claim Documents or otherwise and the rights set forth in paragraph 22 below, all claims and causes of action of the Debtors against TD Bank on account of the Pre-Petition Claims and Pre-Petition Claim Documents or otherwise, including, but not limited to, any claims for preference, fraudulent conveyance or other claims arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the Pre-Petition Claims or the Liens are hereby released, relinquished and waived.

14. **Waiver of Surcharge Rights.** As a further condition of the DIP Facility and any obligations of TD Bank to make credit extensions pursuant to the DIP Financing Documents, the Debtors and the Bankruptcy Estates (and any successors thereto or any representative thereof, including any trustees appointed in the Bankruptcy Cases) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against TD Bank, or the TD Bank Liens. Nothing contained in this Interim Order or in the Final DIP Order shall be deemed a consent by TD Bank to any charge, lien, assessment or claim against the DIP Collateral or the Collateral under section 506(c) or otherwise.

(a) **No Additional Liens**. Except for the Carve-Out, from and after entry of this Interim Order, unless TD Bank has provided its prior written consent or all DIP Obligations have been indefeasibly paid in full in cash, there shall not be entered in these proceedings, or in

any Successor Case, any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order to TD Bank.

15. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of any part of this Interim Order, if at any time prior to the indefeasible repayment in full in cash of all DIP Obligations, the Bankruptcy Estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Documents, then all of the cash proceeds derived from such credit or debt and all cash collateral shall immediately be turned over to TD Bank in reduction of the DIP Obligations in accordance with the relative rights, claims, and priorities specified herein and in the DIP Financing Documents.

16. **Disposition of DIP Collateral.** The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of TD Bank (which shall not be unreasonably withheld or delayed) required under the applicable DIP Financing Documents, except for sales of inventory in the ordinary course of business or except as otherwise provided for in the DIP Financing Documents and this Interim Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law.

17. **No Marshaling/Applications of Proceeds**. TD Bank and the TD Bank Liens shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the TD Bank Liens or any of the TD Bank Collateral.

18. **Events of Default.** Subject to the provisions of the DIP Financing Documents and this Interim Order, unless and until all DIP Obligations are indefeasibly paid in full in cash (or other arrangements for payment of such amounts satisfactory (in their sole discretion) to TD Bank have been made), the protections afforded TD Bank pursuant to this Interim Order and under the other DIP Financing Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a chapter 11 plan or converting these Cases into a case under chapter 7, and the DIP Liens and the DIP Superpriority Claim shall continue in these proceedings and in any Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priority as provided by this Interim Order.

19. **Rights and Remedies Upon Occurrence of Event(s) of Default.** Upon the occurrence of an Event of Default, TD Bank may settle an order (the "Default Order") on not less than five (5) business days' prior written notice of such occurrence and the opportunity to cure and object, as applicable, in each case given to each of the Debtors, the Debtors' counsel, the United States Trustee and counsel for the Committee (collectively, the "Notice Parties") that identifies the applicable Event of Default and provides, among other things, that: (a) the automatic stay under section 362(a) of the Bankruptcy Code shall be deemed lifted, vacated, modified and terminated with respect to TD Bank; and (b) TD Bank shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Documents (unless within such five (5) day period the Bankruptcy Court determines that no default has occurred and is continuing), including, without limitation, (i) to terminate any obligations of TD Bank under the DIP Financing Documents and/or demand payment, and seek enforcement, of the DIP Obligations then outstanding, and (ii) to take any action, in its sole discretion, necessary to preserve and protect the TD Bank Collateral. Notwithstanding the immediately preceding sentence,

immediately following the giving of notice by TD Bank of the occurrence of an Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of TD Bank Collateral to TD Bank as provided in the DIP Financing Documents; (ii) TD Bank shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Documents; and (iii) any obligation otherwise imposed on TD Bank to provide any loan or advance to the Debtors pursuant to the DIP Financing Documents shall immediately be suspended. Notwithstanding anything contained in this Interim Order or the Final Order to the contrary, the Debtors shall have the right to continue to utilize Cash Collateral until and unless the Default Order has been entered, subject to all of the other terms and provisions contained in any order governing such use.

(b)     Subject to all of above provisions of this paragraph, upon the entry of the Default Order, TD Bank is authorized to exercise its remedies pursuant to the DIP Financing Documents and applicable law. All proceeds realized in connection with the exercise of the rights and remedies of TD Bank shall be applied to the DIP Obligations and the Pre-Petition Claims under, and in accordance with the provisions of, the DIP Financing Documents.

20. **Good Faith Under Section 364(e); No Modification or Stay of this Interim Order.** TD Bank is extending credit pursuant to the Order in "good-faith" within the meaning of section 364(e) of the Bankruptcy Code, and the credit extended by TD Bank pursuant to this Order, and in connection with the DIP Facility and the DIP Financing Documents shall be deemed to be extended in good faith within the meaning of section 364(e) of the Bankruptcy Code and TD Bank is entitled to the protections afforded by section 364(e) of the Bankruptcy Code and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens, rights, claims, or priority authorized

or created hereby. Notwithstanding any such potential modification, amendment or vacation, any liens, rights, claims or priorities granted to TD Bank hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens and DIP Superpriority Claims granted to TD Bank shall be governed in all respects by the original provisions of this Interim Order, and TD Bank shall be entitled to all of the rights, liens, priorities remedies, privileges and benefits, including the DIP Liens and DIP Superpriority Claims granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Financing Documents are made in reliance on this Interim Order, the obligations owed TD Bank prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result or any subsequent order in the Bankruptcy Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to TD Bank under this Interim Order and/or the DIP Financing Documents.

21. **Expenses of Secured Creditor.** As provided in the DIP Financing Documents, the Debtors shall pay all reasonable expenses incurred by TD Bank (including, without limitation, the reasonable fees and disbursements of counsel for TD Bank, any other local or foreign counsel that TD Bank shall retain and any internal or third-party appraisers, consultants and auditors advising TD Bank), including in connection with the preparation, execution, delivery and administration of the DIP Financing Documents. Payment of such fees shall not be subject to allowance by the Bankruptcy Court and shall not be required to comply with the U.S. Trustee fee guidelines; *provided*, *however*, that TD Bank shall submit copies of its legal counsel's invoices to the Debtor, the U.S. Trustee and the Committee and such parties shall have twenty (20) days following their receipt of such invoices to object to the reasonableness of the

fees and expenses included in any invoice submitted by TD Bank. Any such objection must describe with particularity the items or categories of fees and expenses that are the subject of the objection, and provide the specific basis for the objection to each such item or category. If any such objection is not resolved within ten (10) days, a hearing with respect thereto shall be conducted at the next regularly scheduled omnibus hearing in the Bankruptcy Cases.

22. **Binding Effect.** The provisions of this Interim Order shall be binding upon and shall inure to the benefit of TD Bank, the Debtors, the Bankruptcy Estates and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Bankruptcy Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case. Notwithstanding anything contained in this paragraph or this Order to the contrary, the waivers and agreements contained in this Interim Order concerning, among other things, the Pre-Petition Claim Documents, the Pre-Petition Claims, the Liens, the Collateral, the Guaranty and the Adequate Protection Replacement Liens shall not apply to the Committee if within forty-five (45) days of entry of this Interim Order, the Committee shall have commenced an adversary proceeding for the purpose of challenging the validity, extent, priority, perfection or enforceability of the Pre-Petition Claim Documents, the Pre-Petition Claims, the Liens, the Collateral, or the Guaranty. To the extent any such adversary is not timely commenced, than all such waivers shall apply to all interested parties in the Bankruptcy Cases and all interested parties shall be forever bound by all such waivers. Further, to the extent that any waiver contained in this Interim Order is not expressly challenged in any such adversary proceeding, than all interested parties in these Bankruptcy Cases shall be forever bound by such waiver.

23. **No Waiver.** The failure of TD Bank to seek relief or otherwise exercise their rights and remedies under the DIP Financing Documents, the DIP Facility, this Interim Order or otherwise, as applicable, shall not constitute a waiver of any of TD Bank's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights or remedies of TD Bank under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of TD Bank upon an Event of Default (i) to request conversion of any or all of the Bankruptcy Cases to cases under chapter 7, dismissal of the Bankruptcy Cases, or the appointment of a trustee in the Bankruptcy Cases, or (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of TD Bank, including against any non-Debtor entity. Neither the commencement of the Bankruptcy Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of TD Bank upon an Event of Default with respect to non-Debtor entities or third parties or their respective assets, whether such rights and remedies arise under the Pre-Petition Claim Documents, applicable law or equity.

24. **No Third Party Rights.** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

25. **Section 552(b).** TD Bank shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the TD Bank Liens, the DIP Obligations and

the Pre-Petition Claims and/or any proceeds, products, offspring or profits of any of the foregoing.

26. **Amendment.** Between the date hereof and the date of entry of the Final DIP Order, the DIP Financing Documents may not be modified in any material respect without further order of the Bankruptcy Court. Upon entry of the Final DIP Order, the Debtors and TD Bank may amend, modify, supplement or waive any provision of the DIP Financing Documents without further approval of the Bankruptcy Court but on prior written notice to counsel for the Committee, unless such amendment, modification, supplement or waiver (x) increases the interest rate (other than as a result of the imposition of the default rate), (y) increases the commitments of TD Bank under the DIP Financing Documents, or (z) changes the Maturity Date (as defined in the DIP Financing Documents). Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and TD Bank and approved by the Bankruptcy Court.

27. **Survival of Interim Order.** The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan in the Bankruptcy Cases, (ii) converting any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Bankruptcy Cases, (iv) withdrawing of the reference of any of the Bankruptcy Cases from the Bankruptcy Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Bankruptcy Cases in the Bankruptcy Court. The terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order and the DIP Financing Documents and any protections granted TD

Bank, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claims and protections for TD Bank shall maintain their priority as provided by this Interim Order until all the DIP Obligations and the Pre-Petition Claims have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming a chapter 11 plan the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

28. **Inconsistency.** In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

29. **Enforceability.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof

30. **No Waivers or Modification of this Interim Order.** The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of TD Bank and no such consent shall be implied by any other action, inaction or acquiescence of TD Bank.

31. **Waiver of any Applicable Stay, including Bankruptcy Rule 6004(h).** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

32.     **Final Hearing.** The final hearing to consider entry of the Final DIP Order is scheduled for October 27, 2009, at 11:00 a.m. (EST) at the Bankruptcy Court (the "Final DIP Hearing").

33.     On or before October 16, 2009 the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final DIP Hearing (the "Final DIP Hearing Notice"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to Committee counsel.  The Final DIP Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than October 22, 2009 at 4:00 pm (EST), which objections shall be served so that the same are received on or before such date by:  (a) counsel for the Debtors; (b) counsel for TD Bank; (c) counsel for the Committee; and (d) the US Trustee.

34.     **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: October ___, 2009

_____
UNITED STATES BANKRUPTCY JUDGE