MICHAEL A. CARDOZO, ESQ.
Corporation Counsel of the City of New York
Attorney for Plaintiff the City of New York
100 Church Street
New York, New York 10007
Of Counsel: Gerald E Singleton, Esq. (GS-4750)
(212) 788-0760
gsinglet@law.nyc.gov

UNITED STATES BANKRUPTCY COURT,
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

In re

TAVERN ON THE GREEN, L.P. and
LEROY ADVENTURES, INC.,

Debtors.

**Chapter 11**

**Case Nos. 09-15450 (ALG)**
**Case Nos. 09-15448 (ALG)**

------------------------------------------------------------------ X   **(Jointly Administered)**


THE CITY OF NEW YORK,

Plaintiff,

-against-

TAVERN ON THE GREEN, L.P. and
LEROY ADVENTURES, INC.,

Defendants.

**Adv. Proc. No.**

**Case Nos. 09-**

**COMPLAINT**

------------------------------------------------------------------ X

Plaintiff, The City of New York ("City"), by its attorney, Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, as and for its Complaint against defendants Tavern on the Green, L.P. ("TAVERN") and LeRoy Adventures, Inc. ("LeRoy"), the Chapter 11 Debtors herein, respectfully alleges as follows:

## Preliminary Statement

1.  In this proceeding, the City seeks declaratory and injunctive relief and an order cancelling or, alternatively, directing defendant TAVERN to assign to the City, the federal

trademark registration that defendant TAVERN holds for the name "Tavern on the Green" for restaurant services, U.S. Reg. No. 1,154,270 (the "Tavern on the Green Trademark") on the grounds that the City, and not defendant TAVERN, is the exclusive owner of the Tavern on the Green Trademark, which defendant TAVERN merely uses as a licensee of the world famous landmark restaurant and premises in Central Park known as "Tavern on the Green." The City's prior use of the name for restaurant services at the licensed premises began in 1934 and the trade name "Tavern on the Green" has become inseparably associated in the minds of consumers with the City and Central Park. Any incremental goodwill that accrued from the use of the trade name by defendant TAVERN, or its predecessors in interest, pursuant to license agreements with the City inured to the benefit of the City and said licensees acquired no right, title or interest in the name apart from the limited right to use such name during the term of their respective licenses. In its bankruptcy filings, defendant TAVERN has claimed ownership of the Tavern on the Green Trademark and assigned it a value of $19 million, making it the purported single largest asset of the bankrupt estate, thereby misleading creditors and the public. Upon information and belief, unless enjoined by this Court, defendant TAVERN intends to operate and/or license third parties to operate restaurants at locations other than Central Park using the Tavern on the Green Trademark without the City's permission in violation of the City's longstanding common law rights.

## PARTIES

2. The City is a municipal corporation organized pursuant to the laws of the State of New York.

3. Defendant TAVERN is a limited partnership formed under the laws of the State of New York, with its principal place of business located at 1995 Broadway, 18th Fl., New York,

NY 10023. TAVERN filed a voluntary petition for relief before this Court on September 9, 2009 pursuant to 11 U.S.C. § 1101 *et. seq.* and has continued in the operation and management of the business pursuant to 11 U.S.C. §§ 1107 and 1108.

4. Defendant LeRoy is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 1995 Broadway, 18th Fl., New York, NY 10023. LeRoy is the general partner of defendant TAVERN and controls its affairs. Leroy also filed a voluntary petition for relief before this Court on September 9, 2009 pursuant to 11 U.S.C. § 1101 *et. seq.*

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1338 and Section 39 of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1121.

6. This matter is a non-core proceeding which, in the absence of a withdrawal of reference, this Court may hear pursuant to 28 U.S.C. § 157(c)(1) and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Southern District of New York, dated July 10, 1984. The City reserves its right to move for a mandatory withdrawal of reference.

7. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Background Facts

8. The City owns certain premises located in Central Park near West 67th Street, known as "Tavern on the Green", which were originally designed by Jacob Wrey Mould and built in 1870 as a sheepfold.

9. In 1934, Parks Commissioner Robert Moses converted the structure into a restaurant and the City began licensing the premises for use as a restaurant under the trade name "Tavern on the Green" with the first concessionaire being the Central Park Catering Corporation.

10. From the late 1930's until 1943, the restaurant was closed and the building was used as the headquarters for the Civilian Patrol Corps.

11. The restaurant reopened in 1943 under new management and was renovated into a year-round facility.

12. The premises underwent a renovation by renowned designer Raymond Loewy in the 1950's, which resulted in the addition of the Elm Room.

13. In 1962, Restaurant Associates, Inc. became the licensee and it operated "Tavern on the Green" until December 31, 1973, at which time the City issued a license to defendant LeRoy.

14. Tavern on the Green is known primarily because of its location and because of the structure; it is an iconic example of the Victorian Gothic style of architecture and is the best surviving work of the British architect Jacob Wrey Mould.

15. Based on the longstanding use of the name "Tavern on the Green" by the City's prior licensees and the Defendants as licensees, the name "Tavern on the Green" has acquired secondary meaning and become inseparably and singularly associated in the minds of consumers with the restaurant at its location in Central Park in the landmark premises it occupies.

16. With more than 700,000 visitors a year, Tavern on the Green is one of the highest grossing restaurants in the United States.

17. Tavern on the Green has become a legendary institution attracting numerous celebrities and enjoying vast amounts of unsolicited media attention over the years.

18. Tavern on the Green has been a featured location in many motion pictures and television shows and it is widely known as the finish line for the annual New York City Marathon.

**The Pertinent Licenses**

19. Pursuant to a written license agreement dated December 20, 1973 (the "1973 License"), the City granted LeRoy "a license to operate on property of City under the jurisdiction of the Parks, Recreation and Cultural Affairs Administration, for the conducting, management and operation of a cabaret and for the sale of food and beverages, including beer, wines and liquors, soft drinks, candies, tobaccos and other articles of merchandise customarily sold in conjunction with restaurant and cabaret operations . . . in the areas and/or buildings described as follows: The TAVERN-ON-THE-GREEN, located in Central Park near West 67th Street, and such paved automobile parking space or spaces as are located adjacent thereto."

20. Paragraph 23 of the 1973 License granted "permission to Licensee to change the name of the licensed premises provided that Licensee obtains Administrator's written approval of the new name proposed by Licensee and Administrator agrees not to withhold such approval unreasonably."

21. Defendant LeRoy never sought permission to change the name and, to the contrary, chose to capitalize on the goodwill and value inherent in the "Tavern on the Green" trade name.

22. Tavern on the Green had been open to the public and operated as a restaurant under that name by a prior licensee, Restaurant Associates, Inc., until on or about December 31, 1973, at which time it was closed for renovations by defendant LeRoy.

23. Tavern on the Green was reopened to the public by defendant LeRoy on August 31, 1976.

24. Under the terms of the 1973 License, LeRoy, as licensee, agreed, among other things, to pay a fee based upon its gross receipts and the City, as licensor, expressly retained approval rights with respect to any proposed change in the name of the premises and other matters pertaining to quality control and the operations of the licensed premises.

25. With the City's consent, the 1973 License was later assigned to a joint venture composed of Leroy, on the one hand, and Hardwicke's Tavern Limited ("Hardwicke"), on the other hand (hereafter referred to as the "Joint Venture").

26. On or about May 16, 1985, the City entered into a new license agreement with defendant LeRoy, pertaining to the operation and use of the licensed premises known as "Tavern on the Green" for a term ending on December 31, 2009 (the "1985 License").

27. Unlike the 1973 License, the 1985 License did not grant the licensee permission to change the name of the premises.

28. The 1985 License contains provisions relating to quality control, including restrictions on assignment that were "intended to assure the City that the Licensed Premises are operated by persons, firms and corporations who are experienced and reputable restaurant operators."

**Defendants' Federal Trademark Registrations**

29. Acting without the City's knowledge or permission, on or about August 16, 1978, the Joint Venture filed an application with the United States Patent and Trademark Office ("USPTO") to register the name "Tavern on the Green" as a service mark for restaurant services in Class 42 for its own exclusive benefit.

30. As part of the application process for the "Tavern on the Green" Trademark, the Joint Venture filed a sworn declaration dated November 21, 1979, in which officers of LeRoy and Hardwicke declared, among other things, that "they believe said joint venture to be the owner of the mark sought to be registered" and that "to the best of their knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in its identical form or in such near resemblance thereto as to be likely, when applied to the goods of such person, firm, corporation or association, to cause confusion or to cause mistake or to deceive."

31. Such statements were false and known by the Joint Venture to be false at the time they were made in that the City was the exclusive owner of the trade name and goodwill associated with the licensed premises.

32. Upon information and belief, the Joint Venture knew of the existence of the City's common law rights in the trade name as evidenced by their written response to an Office Action by the Examining Attorney for USPTO dated August 7, 1979, by which the Joint Venture amended its application for the Tavern on the Green Trademark to add the following statement: "The word "TAVERN" is disclaimed apart from the mark as shown, <u>without waiving any of applicant's common law rights thereto</u>." (Emphasis added).

33. In its application for the Tavern on the Green Trademark, the Joint Venture was required to set forth a date of first claimed use of the trade name in interstate commerce and, in that regard, the Joint Venture claimed that it began using the trade name "at least as early as August 31, 1976," which is the date that the refurbished and renovated restaurant was reopened to the public.

34. A federal registration for the Tavern on the Green Trademark was issued to the Joint Venture on or about May 12, 1981.

35. The registration was later assigned by the Joint Venture to defendant TAVERN.

36. Throughout the term of their stewardship of the restaurant and licensed premises, defendants have traded on the storied history and goodwill built up in the licensed premises by the City's prior licensees, always tracing the origin of the restaurant to 1934, in numerous statements to the media over the years, as well as on the history portion of the website for the restaurant (www.tavernonthegreen.com).

37. In a recently published book entitled "Tavern on the Green", written by Kay LeRoy and Jennifer Oz LeRoy (Artisan January 2009), the authors attest to the fame of Tavern on the Green, calling it a "municipal icon" that has "play[ed] host to millions of guests from all over the world" making it "synonymous with the city."

38. On or about April 11, 2007, defendants filed an application to register the name "Tavern on the Green" as a federal trademark on "oils for cooking and for food, namely, flavored oils, dipping oils" and registration was issued on September 2, 2008 (the "TOG Cooking Oil Registration").

39. Defendants sell prepared salad oils and other items of merchandise bearing the "Tavern on the Green" trade name at a store located on the licensed premises and over the internet.

**FIRST CLAIM FOR RELIEF**
(Declaratory Relief)

40. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 39 as if set forth at length herein.

41. The Court has authority to declare the rights of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Section 37 of the Lanham Trademark Act, 15 U.S.C. § 1119.

42. Defendants as licensees acquired only a limited and non-transferrable right to use the name "Tavern on the Green" for the restaurant in Central Park during the term of the license agreements between the parties.

43. The City had no obligation to take any action against defendants since all prior use of the Tavern on the Green Trademark was consistent with their limited rights under the license.

44. By reason of having accepted licenses to operate a restaurant in Central Park using the name "Tavern on the Green," defendants are estopped under the licensee-estoppel doctrine from claiming rights in the Tavern on the Green Trademark that are inconsistent with the City's exclusive ownership rights.

45. All goodwill associated with the trade name "Tavern on the Green" that is attributable to defendants' operation of the restaurant inured solely to the benefit of the City.

46. Any use of the Tavern on the Green Trademark and/or the TOG Cooking Oil Registration beyond the term of the 1985 License will infringe upon the City's exclusive common law rights in the trade name "Tavern on the Green" in violation of Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a).

47. There is an actual justiciable controversy between the parties concerning their respective rights.

48. Defendants have claimed ownership of rights in the trade name "Tavern on the Green" by reason of its federal trademark registrations, which are inconsistent with the City's exclusive rights.

49. The City's common law rights to use the name "Tavern at the Green" for restaurant services at the licensed premises are superior to, and unaffected by, any rights that defendants may have by reason of the federal registration for the Tavern on the Green Trademark.

50. By reason of the foregoing, the City is entitled to a declaration that it is the exclusive owner of the trade name "Tavern on the Green" for restaurant services and, by extension, under section 43 (a) for cooking oils or, alternatively, that its rights in said name are superior to any rights that defendants may have acquired.

## SECOND CLAIM FOR RELIEF
(Cancellation of Registration)

51. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 50 as if set forth at length herein.

52. This claim arises under Section 14 of the Lanham Trademark Act, 15 U.S.C.§ 1064, which provides that a party may petition for cancellation of a federal trademark registration at any time with respect to a registration that was obtained fraudulently.

53. Defendants fraudulently obtained the Tavern on the Green Trademark.

54. Defendants knew that the statements contained in the declaration submitted to the USPTO in connection with the application for the Tavern on the Green Trademark and the filings for renewal and incontestability were false at the time they were filed in that defendants knew that the City had been using the name "Tavern on the Green" for restaurant services at the licensed premises since 1934 and was the owner of all common law rights thereto.

55. Upon information and belief, defendants knowingly made such false statements in order to induce the USPTO to issue, renew and declare incontestable the Tavern on the Green Trademark.

56. Upon information and belief, the USPTO relied on defendants' claim of exclusive ownership to the Tavern on the Green Trademark and would not have issued a federal registration for the Tavern on the Green Trademark had it known of the falsity of the statements contained in the application for said registration.

### THIRD CLAIM FOR RELIEF
(Cancellation of Registrations)

57. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 56 as if set forth at length herein.

58. This claim arises under Section 14 of the Lanham Trademark Act, 15 U.S.C.§ 1064, which provides that a party may petition for cancellation of a federal trademark registration at any time with respect to a registration that was obtained contrary to Section 2(a) of the Lanham Trademark Act, 15 U.S.C. § 1052(a), namely, a registration that consists of matter which may falsely suggest a connection with an institution.

59. The "Tavern on the Green" trade name is singularly associated with the restaurant and premises in the Central Park.

60. Tavern on the Green is an institution within the meaning of Section 2(a).

61. Defendants' use of the Tavern on the Green Trademark and/or the TOG Cooking Oil Registration in connection with the operation of restaurants at other locations would falsely suggest a connection to the Central Park restaurant.

62. By reason of the foregoing, this Court should direct the USPTO to cancel the Tavern on the Green Trademark and TOG Cooking Oil Registration or, alternatively, order

defendants to transfer said registrations to the City, pursuant to Section 37 of the Lanham Trademark Act, 15 U.S.C. § 1119.

### FOURTH CLAIM FOR RELIEF
(Cancellation of Registration)

63. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 62 as if set forth at length herein.

64. This claim arises under Sections 2(d) and 14 of the Lanham Trademark Act, 15 U.S.C. §§ 1052(d) and 1064, which provide that a party may petition for cancellation of a federal trademark registration within five years from the date of registration where the party believes it will be damaged by a registration because the use of the mark by the registrant is likely to cause confusion, or to cause mistake, or to deceive.

65. Defendants' use of the TOG Cooking Oil Registration is likely to cause confusion and mistake among consumers who will mistakenly believe that defendants' product is produced by or under the authority of the City.

### **PRAYER FOR RELIEF**

**WHEREFORE**, the City respectfully requests judgment as follows:

(1) Declaring that defendants have no rights to use the trade name "Tavern on the Green" or, alternatively, declaring that the City's common law rights to use the trade name "Tavern on the Green" for its restaurant in Central Park near West 67th Street are superior to defendants' claimed rights under the Tavern on the Green Trademark and/or the TOG Cooking Oil Registration;

(2) Enjoining defendants, and their officers, agents, representatives, servants, employees, attorneys, successors, and assigns, and all others in active concert or participation

with defendants, from using any colorable imitation of the Tavern on the Green Trademark, pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116;

(3) Directing the USPTO to cancel the federal trademark registrations for the Tavern on the Green Trademark and the TOG Cooking Oil Registration or, alternatively, ordering defendant TAVERN to assign such registrations to the City pursuant to Section 37 of the Lanham Act, 15 U.S.C. §1119.

(4) Awarding Plaintiff reasonable attorneys' fees because of the willful nature of defendants' acts, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

(5) Awarding plaintiff such other additional relief as the Court may deem just and proper.

Dated: New York, New York
October 21, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
*Attorney for Plaintiff*
100 Church Street  Rm 20-093
New York, New York 10007
(212) 788-0760

By: /s/ Gerald E. Singleton
Gerald E. Singleton (GS-4750)