UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
In re : Chapter 11
: 
TAVERN ON THE GREEN L.P. et al., : Case No. 09-15450 (ALG)
: Case No. 09-15448 (ALG)
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------x

# DEBTORS' MOTION FOR AUTHORIZATION TO (i) IMPLEMENT EMPLOYEE INCENTIVE PLAN AND (ii) HONOR OTHER BENEFITS PROGRAMS

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Tavern on the Green, L.P. ("TOTG") and Leroy Adventures, Inc. ("Leroy") (collectively "Debtors"), as debtors and debtors-in-possession herein, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On September 9, 2009, TOTG commenced this case by the filing of a voluntary petition pursuant to Chapter 11 of the Code. TOTG remains in possession of its assets and is operating as a debtor-in-possession pursuant to the Code.

3. On September 9, 2009, Leroy commenced its bankruptcy case by the filing of a voluntary petition pursuant to Chapter 11 of the Code. Leroy remains in possession of its assets and is a debtor in possession pursuant to the Code.

4. Pursuant to an Order dated September 22, 2009, these cases are jointly administered.

5. On September 17, 2009, the Official Committee of Unsecured Creditors was appointed in these cases and is represented by the law firm of Duval & Stachenfeld LLP. No trustee or examiner has been appointed in these cases.

6. Prior to the commencement of these cases and at all material times hereto, TOTG owned and operated the world famous landmark restaurant and banquet facility known as "Tavern On The Green" located in New York City's Central Park.

7. The Debtors continue to operate their business and manage their properties as debtors in possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

## RELIEF REQUESTED

8. By this Motion, the Debtors seek authorization, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to (i) implement an employee incentive plan (the "EIP") to encourage the retention of and performance by certain essential, non-insider, employees of the Debtors (the "Key Employees") and (ii) authorize and continue certain other employee benefits and compensation programs ("COBRA Benefits"). The EIP is necessary to prevent attrition over the holidays and to ensure that the Key Employees will continue to provide essential managerial and other required professional services to the Debtors during the pendency of the Debtors' chapter 11 cases. Similarly, New York's new COBRA law signed by Governor Paterson on July 29, 2009, amends the New York Insurance Law to require employers such as TOTG with 20 or more employees to permit employees and their

covered family members to continue group health coverage for 36 months following the employee's termination of employment or reduction of hours. Therefore, COBRA Benefits must be approved if TOTG will be able to lawfully continue employing certain employees past December 31, 2009.

9. As detailed below, the EIP seeks to provide incentive payments, in the aggregate amount of $200,000, to 6 employees of full-time status. The $250,000 total expenditure as proposed under the EIP will be included in the cash flow projections annexed to the Proposed Disclosure Statement which will be filed shortly with the Court.

### The Employee Incentive Plan

10. The EIP will compensate 6 employees for their continued loyalty and contribution to the Debtors' businesses: Michael Desiderio, Chief Operating Officer; William Zambrotto, General Manager for entire operation; BrianYoung, Head Chef; David Hart, Operations Manager for restaurant; Eric Bukhman, Controller; and, Brian Kalman, Banquets Manager. Individuals in each Group outlined below have been selected by the Debtors' based upon their unique skills, responsibilities, performance and value to the Debtors' operations. Many more of the Debtors' employees have unique and valuable skills that are important to the successful operation of the Debtors' businesses; however, due to limited funds available to the Debtors for employee incentives, the Debtors were forced to select only a small number of such Key Employees to participate in the EIP.

11. Group 1 includes Michael Desiderio and William Zambrotto. These employees hold leadership positions and are critical to the Debtors' ability to generate revenue and maintain the Debtors' workforce through the entire pendency of these chapter 11 cases.

12. Group 2 is comprised of Eric Bukhman and Bryan Kalman. These employees work in various essential functions, including sales and corporate management.

13. Group 3 is comprised of David Hart and Brian Young. These employees, including Mr. Young who is the Head Chef responsible for the menu on a daily basis, are critical to the Debtors' ability to create and consistently deliver the quality food and beverages through the end of the holidays which patrons have come to expect at Tavern On The Green.

14. The Key Employees are eligible to receive bonuses for their continued commitment and service to the Debtors through the end of the year or December 31, 2009. Retention bonuses are payable in a single end-of-year installment payment ("Installment Payment"). Each employee in Group 1,2 and 3 will receive a bonus in the aggregate amount of between 10-15% of their annual salary with the exception of Mr. Desiderio who will receive a bonus in the aggregate amount of 34% of his annual salary. The total proposed cost of the EIP for Key Employees is $200,000. It is important to note that both Mr. Desiderio and Mr. Bukhman voluntarily waived their contractual right to receive a bonus last year.

15. The Debtors' reserve the right to modify or terminate the proposed EIP at any time in their sole discretion. If an individual selected to participate in the EIP resigns or is terminated for cause prior to the completion of the Retention Period, the entire unpaid retention incentive will be forfeited and, if such employee is eligible to receive severance upon termination, severance payments will be reduced by the amount of any retention incentive already paid. If a participant in the EIP is terminated without cause by the Debtors or their employment is terminated by mutual consent prior to the end of the Retention Period, such employee will be eligible to receive the unpaid retention incentive.

{NY087158;1}

16. In addition to the retention incentives, the EIP provides for the creation of a discretionary bonus pool (the "Discretionary Pool") in the amount of $50,000 from which individual bonus payments may be initially awarded in the Debtors' sole discretion by Mr. Desiderio as Chief Operating Officer. However, in order to obtain consent to the instant motion, the Debtors' shall be required to obtain final allowance of any such award as determined by the Unsecured Creditors' Committee. The purpose of the Discretionary Pool is to allow the Debtors flexibility to reward employees (whether or not they are current participants in the EIP), as necessary, to deal with isolated issues that may arise during the Retention Period and which are not accounted for in the more structured retention program designed for the above participants. For instance, the Debtors may award a retention bonus to an employee (regardless of whether such employee is or is not currently eligible to receive a bonus under the EIP) if the Debtors determine that an employee should be rewarded for exceptional performance or if payment of a bonus is critical to retain an employee through the holidays that is essential to the success of the Debtors' businesses.

17. The Debtors seek authorization pursuant to sections 105(a) and 363(b) to make payments under and to continue to honor the Other Benefits Programs.

### Implementation of an Employee Incentive Plan and Other Benefits Programs is Necessary and Appropriate

18. Preserving and enhancing the value of the Debtors' businesses depends on maintaining the focus, morale and loyalty of their workforce, especially their Key Employees that (i) have valuable institutional knowledge regarding the Debtors' operations and relationships with counter-parties, customers, vendors, advisors and other employees — relationships that are critical to the Debtors' successful operations - and (ii) are highly skilled

and are highly desired by and marketable to the Debtors' competitors. At this critical juncture in the Debtors' financial and operational restructuring, the Key Employees are needed to maintain and stabilize operations not only during the remainder of the chapter 11 cases, but after emergence in order to implement the operational changes and new business strategies contemplated by the Debtors.

19. The EIP is necessary for a number of reasons. The Debtors are aware that certain Key Employees have alternative employment opportunities available to them. The EIP is necessary to demonstrate the Debtors' commitment to their Key Employees and to avoid further losses associated with attrition.

20. Second, implementation of the EIP will foster employee morale and provide motivation to Key Employees (and in turn other employees) to focus on and remain loyal to the Debtors.

21. Third, the EIP will help eliminate the substantial out-of-pocket costs that would result if the Debtors were required to replace the Key Employees, including, among others, costs related to or including (i) recruiter or headhunter fees, (ii) consultants that would be needed to fill the vacated positions of Key Employees on an interim basis pending hiring of suitable replacement employees, and (iii) signing bonuses for replacement employees.

22. Fourth, the EIP will help the Debtors to retain (i) access to the important institutional knowledge which would be difficult to replace through the outside job market, especially due to the Key Employees' specialized skills and (ii) key contacts with customers (including government agencies) and vendors — relationships that could be lost or

severely compromised by the loss of Key Employees. The Debtors' reliance on key customer relationships, including those with the federal government, makes maintaining strong working relationships with their customers a particularly important part of the Debtors' operations.

23. Fifth, the EIP is beneficial to the Debtors because it will: (i) facilitate the Debtors' ability to continue to realize value from the significant time and resources they incurred in recruiting, training and retaining their Key Employees, and; (ii) help the Debtors to retain the Key Employees, who are necessary for maintaining the value of the name of the business. Finally, implementation of the EIP will help the Debtors to mitigate the disruptive domino effect of additional employee departures that can accompany the loss of a particular Key Employee.

24. In addition, payment of all outstanding amounts under the COBRA Benefits Programs is necessary to maintain and foster employee morale, to meet employee expectations, and to comply with New York Insurance Law. Failure to pay amounts owed to the Debtors' employees under the COBRA Benefits Programs will be detrimental to the Debtors' ability to reorganize and wind-down its business affairs at this critical juncture in the chapter 11 cases.

25. Specifically, TOTG plans to hire Mr. Desiderio and Mr. Bukhman as consultants in 2010 in order to wind down operations and successfully confirm these cases. Without priority COBRA Benefits, it will be unable to do so.

## The Court Should Authorize the Employee Incentive Plan and the Other Benefits Programs Under Sections 105(a) and 363(b) of the Bankruptcy Code

26. This Court should authorize and approve the EIP and the Other Benefits Programs pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, as an appropriate exercise of the Debtors' business judgment and this Court's equitable powers. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "sound business purpose" that justifies such action. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

27. Section 105(a) of the Bankruptcy Code confers upon the Court broad equitable powers to fashion an order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. See, e.g., In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); Bird v. Crown Convenience (In re NWFX, Inc.), 864 F.2d 588, 590

{NY087158;1}

(8th Cir. 1988) ("The overriding consideration in bankruptcy ... is that equitable principles govern"); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

28. The Debtors' have a sound business justification for implementation of the EIP and the payments proposed herein are justified by the facts and circumstances of these chapter 11 cases and, therefore, satisfy the standard of section 363(h) of the Bankruptcy Code. As detailed above, the Debtors require the Key Employees' specific skills, institutional knowledge and focused attention during the remainder of the chapter 11 cases and after emergence. During the course of the chapter 11 cases, the Debtors have experienced significant attrition which has resulted in out of pocket costs. In addition, the Debtors' have suffered from significant intangible costs which stem from the loss of institutional knowledge, the loss of key and possibly irreplaceable relationships with vendors and customers, and the risk of other departures. Implementation of the EIP will aid the Debtors in retaining Key Employees and encouraging these employees to remain focused on their work and committed to the Debtors for at least the Retention Period. The EIP will no doubt help to reduce the costs associated with attrition and for a relatively small price.

29. Where a sound business purpose exists, courts in this district have authorized the implementation of compensation programs for key employees pursuant to sections 105(a) and 363(h)(I) of the Bankruptcy Code. See, e.g., In re Calpine Corp., et al., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. 2005); In re Refco Inc., et al., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. 2005); In re Loral Space & Communications Ltd., et al.,

{NY087158;1}

Case Nos. 03-41709 through 03-41728 (RDD) (Bankr. S.D.N.Y. 2003); In re Actenia Corp., et al., Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. 2003); In re WorldCom, Inc., Case No., 02-13533 (AJG) (Bankr. S.D.N.Y. 2002); In re Global Crossing Ltd, et al., Case Nos. 02-40187 through 02-40241 (REG) (Bankr. S.D.N.Y. 2002); In re Enron Corp., Case No 01-16034 (Bankr S.D.N.Y. 2002); In re Adelphia Business Solutions, Inc., et al., Case No. 02-11389 (Bankr. S.D.N.Y. 2002).

30. The EIP does not implicate the restrictions set forth in section 503(c)(1), (2), or (3) of the Bankruptcy Code. Section 503(c)(1) of the Bankruptcy Code limits payments to "insiders" to the extent such payments are made "for the purpose of inducing such person to remain with the debtor's business." Section 503(c)(2) restricts "severance payments" to "insiders." Neither section 503(c)(1) nor 503(c)(2) is applicable here because the proposed EIP does not include retention payments to "insiders" or severance payments of any kind.

31. Section 503(c)(3) of the Bankruptcy Code is inapplicable because the Key Employees were not hired after the Commencement Date and, as set forth above, the payments proposed herein are justified by the facts and circumstances of these cases.

32. For all of the foregoing reasons, implementing the EIP and honoring the Debtors' obligations under the Other Benefits Programs are sound exercises of the Debtors' business judgment, necessary and appropriate for the preservation of the Debtors' estates and is in the best interests of the Debtors' businesses and employees. The EIP and the Other Benefits Programs, therefore, should be approved. In addition, payment obligations under the EIP, to the extent they are made prior to the Debtors' emergence from chapter 11, should be accorded administrative expense priority under section 503(b)(1)(a) of the Bankruptcy Code.

## Waiver of Memorandum of Law

33. This Motion includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Local Rule 9013-1(b) that a separate memorandum of law be submitted.

## Notice

34. No trustee or examiner has been appointed in these Chapter 11 cases. The Debtors have served notice of this Motion upon all the necessary parties identified in <u>Exhibit A</u>, including Counsel for the Official Committee of Unsecured Creditors, Counsel for the Secured Creditor TDBank, N.A., and The Office of the United States Trustee for the Southern District of New York. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## NO PRIOR REQUEST

35. No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE** the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as it may deem just and appropriate.

Dated: December 14, 2009
New York, New York

Respectfully submitted,

**AKERMAN SENTERFITT LLP**

/s/ Keith N. Costa
Keith N. Costa (KC 1213)
335 Madison Avenue, Suite 2600
New York, NY 10017
Telephone: (212) 880-3800

{NY087158;1}

Facsimile: (212) 880-8965
keith.costa@akerman.com

*Counsel to the Debtors and Debtors-in-Possession*

{NY087158;1}