Hearing Date: December 17, 2009 @ 2:30pm

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | x : : | Chapter 11 |
| TAVERN ON THE GREEN LIMITED PARTNERSHIP et al., | : : : | Case No. 09-15450 (ALG) Case No. 09-15448 (ALG) |
| Debtors. | : x | (Jointly Administered) |

**DEBTORS' AMENDED OMNIBUS MOTION TO: *i)* ASSUME CONTRACT OF SALE BETWEEN TAVERN ON THE GREEN L.P. AND LEROY ADVENTURES, INC. AS SELLERS AND P&N BAKERY LLC AS PURCHASER PURSUANT TO SECTION 365 OF THE CODE; AND IN THE ALTERNATIVE, *ii)*MOTION TO AUTHORIZE SALE OF WAREHOUSE PREMISES TO P&N BAKERY, LLC PURSUANT TO SECTION 363**

Tavern On The Green Limited Partnership ("TOTG") and Leroy Adventures, Inc. ("Leroy") (collectively "Debtors"), as debtors and debtors-in-possession herein, by and through their undersigned counsel and pursuant to 11 U.S.C. Sections 365 and 363 and Federal Rules of Bankruptcy Procedure 6006, 6004, 7062, and 9014, hereby file their Motion To: *i)* Assume Contract of Sale Between TOTG and Leroy as Sellers and P&N Bakery, LLC as Purchaser pursuant to Section 365 of the Code; and *ii)* alternative motion to authorize sale of Warehouse Premises (defined below) to P&N Bakery, LLC (or its assignee) pursuant to Section 363 of the Code, subject to higher and better offers and free and clear of liens, claims and encumbrances, and in support hereof states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## FACTS

### The Commencement of the Related Cases and the Debtors' Operations

3. On September 9, 2009, TOTG commenced this case by the filing of a voluntary petition pursuant to Chapter 11 of the Code. TOTG remains in possession of its assets and is operating as a debtor-in-possession pursuant to the Code.

4. On September 9, 2009, Leroy commenced its bankruptcy case by the filing of a voluntary petition pursuant to Chapter 11 of the Code. Leroy remains in possession of its assets and is a debtor-in-possession pursuant to the Code.

5. Prior to the commencement of this case and at all material times hereto, TOTG owned and operated the world famous landmark restaurant and banquet facility known as Tavern On The Green currently located in New York City's Central Park.

6. Prior to the commencment of this case, the Debtors had engaged in extensive marketing and negotiations concerning the sale of the Premises. Debtors hired a real estate broker, Mr. Mitchell Katz of CBRE ("Broker"), who originally listed the Premises at approximately $5M. Several competing offers well below that listed price were received pre-petition before the Purchaser originally offered $3.5M. Additional competing offers (no longer viable) resulted in the Purchaser eventually increasing its offer to a $3.9M purchase price, but subject to a financing contingency as reflected under the terms of the original Contract dated July 23, 2009. During the post-petition period, as the financing contingency deadline date of December 10, 2009 approached, it became apparent to both parties that said financing

contingency (e.g. corporate guarantees) could not be met. In addition, both parties agreed to negotiate a lower sale price to reflect the environmental remediation estimates of approximately $233,000 relating to the recently discovered asbestos and lead paint removal and cleanup costs. The Debtors only learned post-petition that there may be asbestos and lead paint on the Premises requiring a clean-up. However, the Debtors and Purchaser resolved these issues by adjusting the purchase price by the Amendment and both parties remain committed to closing on the sale of the Premises Therefore, by Amendment To Sale Contract signed by Debtors on December 15, 2009, the Debtors finally agreed to accept an all-cash price offer of $3.5 with a closing to occur "on or about December 15, 2009." The Debtors, in their sound business judgment, have determined that closing on the sale of the Premises pursuant to the modified Contract will benefit their estates and creditors since the purchase price is fair and reasonable.

**Sound Business Purpose**

7. The Debtors have lost its ability to continue to operate its business past the end of 2009; therefore, there is obviously no longer any purpose to retaining the Warehouse. Continued ownership of the Warehouse would plainly be imprudent and contrary to the best interests of the Debtors and its creditors. The Debtors believe that an expeditious sale is necessary to assure the receipt of the highest possible price for the Warehouse. This will permit the Debtors to close on the sale of the Premises eliminating the uncertainty and delay attendant with re-marketing the Premises during the current economic downturn. Indeed, any subsequent alternative purchaser would likely require a similar concession concerning the asbestos and lead paint remediation. The Debtors believe that any delay of the proposed sale will create significant risk to the Debtors' ability to receive the highest possible value for the Warehouse. Accordingly, the Debtors submit that this proposed sale is an exercise of the Debtors' sound business judgment.

## Good Faith

8. The proposed sale of the Property has been the product of arm's length negotiations between the Debtors and the prospective buyer.

## Proposed Sale of the Warehouse Facility

9. On display throughout Tavern On The Green is abundant collectible artwork owned by the Debtors. The Debtors currently own a warehouse located at 38-40, 38-66 and 38-68 10th Street, Long Island City, Queens, New York (the "Warehouse Premises" or "Warehouse" or "Premises"), where TOTG stores additional artwork it owns while not on display at Tavern On The Green.[1]

10. Prior to the commencement of this case, the Debtors as sellers entered into a Contract of Sale to sell the Warehouse, the land where it is situated, and all appurtenances thereto (the "Premises"), to P&N Bakery, LLC (the "Purchaser"). A true and correct copy of the Contract of Sale Between Tavern On The Green, L.P. and Leroy Adventures, Inc. as Seller and P&N Bakery, LLC as Purchaser, together with two Riders thereto and an Amendment To Contract Of Sale signed December 15, 2009 ("Amendment"), are attached hereto and incorporated herein as Exhibit "A" (collectively referred to hereinafter as the "Contract").

11. The salient terms of the modified Contract are as follows:

-Purchase price $3,500,000 in cash due at Closing;

-$195,000 down payment (already paid and being held in escrow by Debtor);

-Closing date on or about December 15, 2009
(tentatively set for December 22, 2009);

-Sale is "as is" except as expressly provided for in Contract;

---

[1] Leroy owns parcels 38-40 & 38-66 10th Street and TOTG owns parcel 38-68 10th Street. The net proceeds of the sale will be shared by Leroy and TOTG pursuant to the Debtors' plan of reorganization which will be duly submitted for this Court's approval upon proper application and notice to all creditors.

{NY087408;1} 4

-Debtors shall indemnify the Purchaser relating to claims, including reasonable attorneys fees and disbursements, stemming from violations of laws affecting the Premises and/or release of hazardous materials (the "Indemnity"). *See* undated Rider to contract at ¶ 3;

-Due Diligence period which expired providing the Purchaser with the opportunity to obtain an environmental report concerning the presence or absence of hazardous or toxic materials and to cancel the Contact by written notice;

-Financing contingency which expires on December 10, 2009 (the "Financing Contingency");

-Purchaser assigns any and all rights and interest in the Contract to a related entity known as "The 38-40 LLC"; and

-Various provisions concerning the Debtors' lack of intent to seek bankruptcy relief.

12. This sale will be free and clear of liens, claims, and encumbrances. The secured creditor in these cases, TDBank, N.A., has a first security position on the net proceeds of this proposed sale. As a matter of fact, the specific adjustments to the sale price before net proceeds are paid to TDBank, N.A. at the closing need to be listed on the order granting this motion.

## RELIEF REQUESTED

### Assumption of the Contract

13. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

14. Courts defer to a debtor's business judgment in assuming or rejecting an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve such assumption or rejection under section 365(a) of the Bankruptcy Code. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing the "business judgment" standard used to authorize disposition of executory contracts); *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996) (same); *In re Minges*, 602 F.2d 38, 42-43 (2d Cir. 1979) (same); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (same); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (stating that a debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment").

15. Moreover, when assuming an executory contract, a debtor is required to cure any defaults under the contract or provide adequate assurance that it will promptly cure such defaults. 11 U.S.C. § 365(b)(1)(A). If there has been a default, the debtor must also provide adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(C).

16. Importantly, assumption under Section 365 of the Code is the appropriate mechanism when seeking to enforce a pre-petition contract for the sale of property even though the buyer and seller agreed, postpetition, to nonmaterial modifications of the sales contract. *See In Re Chira*, 367 B.R. 888 (S.D. Fla. 2007); *In Re Ionosphere Clubs, Inc.*, 100 B.R. 670 (Bankr. S.D.N.Y. 1989). In the analogous case *of In Re Chira*, the Court found that Section 365 applied to a pre-petition contract for sale notwithstanding that the contract was modified by the parties postpetition. *In Re Chira*, 367 B.R. at 898-901. The fact that the parties entered into a separate

settlement postpetition did not preclude assumption as material obligations were not removed from the contract and the settlement was an attempt to assure future performance under the assumed agreement. *Id.* at 900. The Bankruptcy Court had no obligation to apply Section 363 of the Code to the sale. *Id. See City of Covington v. Covington Landing Ltd.*, 71 F.3d 1221 (6th Cir. 1995) (Nothing in the Code suggests that parties to a pre-petition executory contract cannot consensually modify the contract). In the distinguishable case of *In Re Ionoshpere Clubs, Inc.*, the parties to a pre-petition executory sales contract made material changes to the contract and sought authorization to assume the contract pursuant to Section 365 of the Code. The Court found that the substantially changed contract was not a pre-petition executory contract subject to assumption, but a "new" postpetition contract subject to approval under Section 363 of the Code. *Id.* at 673-74.

17. The Official Committee of Unsecured Creditors, by its counsel, has indicated in writing to the undersigned its agreement to this decision by the Debtors to immediately proceed with the sale of the Warehouse Premises by motion rather than an eventually confirmed plan. Although a copy of the instant motion was previously provided to TDBank's counsel, no agreement has been received to date from the secured creditor.

18. Accordingly, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

**Alternative Motion to Authorize Sale Pursuant to Section 363 of the Code**

19. Alternatively, in the event the Court determines that Section 363 is the proper mechanism for sale of the Premises, the Debtors seek authority to sell the Premises pursuant to the terms of the Contract as modified by the Settlement Agreement, by private sale subject to the

higher and better offers appearing by the hearing date of the instant motion, pursuant to Section 363 of the Code and Federal Rule of Bankrutpcy Procedure 6004.

20. Pursuant to Section 363, the Debtors, after notice and hearing, may sell property of the estate out of its ordinary course of business. 11 U.S.C. § 363(b). Rule 6004 provides that sales out of the ordinary course of business may be by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1). A sale out of the debtor's ordinary course of business is warranted when the debtor can show a sound business purpose for the sale. *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir.1983). As shown above, the Debtors have sound business reasons for selling the Premises to the Purchaser, *to wit,* the purchase price is fair and reasonable; the sale to the Purchaser will avoid delay and eliminate the substantial risks that the Premises decline in value and/or, that the Debtors are unable to successfully re-market the Premises; and, the sale to the Purchaser will eliminate the costs and inherent delay associated with re-marketing the property and conducting an auction.

21. Accordingly, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

## **Waiver of Stay**

22. The Debtors request that this Court waive the 10 day stay of the order authorizing the sale of the Warehouse pursuant to Federal Rule of Bankruptcy Procedure 6004(h) and 7062(e).

## Waiver of Memorandum of Law

23. Authority for the relief requested is set forth herein; therefore, the Debtors respectfully request that the Court waive the requirement in LBR 9013-1 that the Debtors submit a separate memorandum of law.

## Notice

24. Notice of this Application has been given to counsel to the Official Committee of Unsecured Creditors, the United States Trustee for the Southern District of New York and all other parties that have requested receipt of notices in these cases. In light of the relief requested, the Committee submits that no other or further notice need to be provided.

## No Prior Request

25. The Debtors have not previously requested the relief sought in this Motion from this Court or any other court.

**WHEREFORE,** the Debtors respectfully request that this Court: (a) enter an order to be submitted granting the relief requested herein; and (b) grant to the Debtors such other and further relief as this Court may deem proper.

Dated: December 16, 2009

/s/ Keith N. Costa
Keith N. Costa (KC 1213)
Akerman Senterfitt LLP
335 Madison Avenue, Suite 2600
New York, New York 10017-4636
Tel: (212) 880-3880
Fax: (212) 880-8965
keith.costa@akerman.com
Counsel for the Debtors