UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
: 
In re : Chapter 11
: 
TAVERN ON THE GREEN L.P. et al., : Case No. 09-15450 (ALG)
: Case No. 09-15448 (ALG)
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------x

# DEBTORS' MOTION BY ORDER TO SHOW CAUSE FOR ORDERS (A) AUTHORIZING AND SCHEDULING AN AUCTION TO SOLICIT BIDS FOR THE SALE OF SUBSTANTIALLY ALL ASSETS RELATED TO THE OPERATION OF THE DEBTORS' BUSINESS FREE AND CLEAR OF LIENS, INTERESTS AND ENCUMBRANCES; (B) APPROVING SALE PROCEDURES; AND (C) ESTABLISHING THE FORM AND MANNER OF NOTICES

Tavern On The Green Limited Partnership ("Tavern") and LeRoy Adventures, Inc. ("LeRoy")(collectively, the "Debtors"), through its undersigned counsel hereby submit this motion (the "Motion") by Order To Show Cause pursuant to Federal Rule of Bankruptcy Procedure 2002 (a)(2) for the entry of Orders pursuant to Sections 105, 363 and 365 of Title 11 of the United States Code ( the "Bankruptcy Code"), as follows:

(A)     Authorizing and scheduling an auction (the "Auction") to sell substantially all of the Debtor's assets ("Assets") free and clear of liens, interests and encumbrances (the "Sale");

(B)     Establishing reasonable and necessary sale procedures in connection with the sale of the Assets by Auction (the "Sale Procedures"); and

(C)     Establishing the form and manner of notice of the Sale, the Auction and the Sale Procedures.

In support of this motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On September 9, 2009, TOTG commenced this case by the filing of a voluntary petition pursuant to Chapter 11 of the Code. TOTG remains in possession of its assets and is operating as a debtor-in-possession pursuant to the Code.

3.      On September 9, 2009, Leroy commenced its bankruptcy case by the filing of a voluntary petition pursuant to Chapter 11 of the Code. Leroy remains in possession of its assets and is a debtor-in-possession pursuant to the Code.

**A. Reasons for an Auction Sale**

4.      On November 24, 2009, this Court signed the order (Doc. #98) authorizing the Debtors' retention of Guernsey's as auctioneer ("Guernsey's" or "Auctioneer") on the grounds, among others, that the Debtors' will cease its restaurant operations on December 31, 2009, in order to allow Guernsey's to conduct an auction of everything remaining in place belonging to the Debtors.

5.      The specific fine arts and restaurant business assets to be sold by Guerseny's at auction ("Assets") have been listed and provided to the City of New York on December 15, 2009, as otherwise required by this Court.

6.      The Debtors have concluded that an auction sale will be the best method for the sale of the Debtors' Assets. In response to numerous inquiries by potential purchasers, the

Auctioneer has prepared a so-called "Sale Book" for distribution to potential bidders. The Sale Book contains all the Assets to be sold by the Auctioneer, including the following information:

(a) inventory of fine arts items scheduled to be sold (over 600 lots);

(b) schedule of restaurant property being sold (over 300 lots);

(c) CD containing listing, description and images of the vast majority of auction lots being sold on January 13-15, 2009.

7. In addition to the Sale Book, the Debtors' have prepared the following:

(a) Notice of Auction Sale (with Auctioneer's summary page), a copy of which is attached hereto as **Exhibit A**;

(b) Sale Procedures (with Auctioneer's Standard/Special Terms & Conditions), a copy of which is attached hereto as **Exhibit B**; and

(c) Memorandum of Sale (with Bidder Agreement Form/Absentee Bid Form), to be executed by the successful bidder upon conclusion of the auction, a copy of which is attached hereto as **Exhibit C.**

**B.     The Assets**

8. The Assets will consist of:

(a) Debtors' right, title and interest in and to all tangible property used in the operation of the Debtor's business;

(b) Debtors' right, title and interests in and to all personal property and various pieces of fine arts (e.g. chandeliers, paintings, etc.).

9. The Assets do **not** include (a) any cash held by the Debtor or the estate on the closing date, (b) causes of action, including avoidance and recovery action under the Bankruptcy Code, and (c) any intangible property related to the Assets.

## DISCUSSION

### A. The Proposed Sale Satisfies the Applicable Standard for Sales Pursuant to Section 363(b) of the Bankruptcy Code

10. Section 363 (b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

11. Bankruptcy courts have a great deal of discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992). In addition to the notice and hearing requirements of Bankruptcy Code Section 363, the widely followed and liberal business justification test has been applied by courts where a debtor wished to conduct a pre-confirmation sale of all or substantially all of its assets. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141 (2nd Cir. 1992); *In re Global Crossing LTD*, 295 B.R. 726, 742 (Bankr. S.D.N.Y. 2003).

12. Courts have made it clear that a debtor's showing of a sound business justification need not be unduly exhaustive. Rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888,

906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Such justifications exist in the present case.

13. When considering whether a debtor has demonstrated a sound business justification for a proposed sale of assets under Section 363(b) of the Bankruptcy Code, the United States Court of Appeals for the Second Circuit has held that a bankruptcy court "should consider all salient factors pertaining to the proceeding, including (a) the proportionate value of the asset to the estate as a whole, (b) the amount of time that has elapsed since the filing, (c) the likelihood that a plan of reorganization will be proposed and confirmed in the near future, (d) the effect of the proposed disposition on future plans of reorganization, (e) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, (f) which of the alternatives of use, sale or lease the proposal envisions, and (g) whether the asset is increasing or decreasing in value. *See Lionel*, 722 F.2d at 1071. In evaluating these and other pertinent factors, a court should bear in mind that the overriding goal is "to further the diverse interests of the debtor, creditors and equity holders, alike". *Lionel*, 722 F.2d at 1071.

**B.     The Proposed Auction Sale is Supported by Sound Business Judgment**

14. The Debtors intend to use the funds generated by the sale to fund a liquidating plan of reorganization.

15. The Assets are best positioned to be sold by auction right now. In order to preserve their value to the Debtors' estates and creditors, it is crucial that these Assets be sold by auction as expeditiously as possible.

16. Under ideal circumstances, not present here, the Debtors would continue to operate its business while pursuing deliberate marketing efforts. The Debtors do not have the luxury of time. Because of the uncertainty created by closing its doors as a restaurant on or

5

about December 31, 2009, and because the Debtors need to vacate its Central Park premises by February 14, 2010, the instant sale motion will essentially best preserve the value of the Debtors' assets by converting them immediately to cash. Accordingly, the Debtors believe that the proposed sale is in the best interest of the estate and its creditors. The Debtors believe that the proposed sale is justified under the *Lionel* sound business justification test and is necessary to maximize any return to the estates' creditors.

### C.  The Debtors' Will Provide Reasonable and Adequate Notice of the Sale to Interested Parties

17. By this Motion, the Debtors seek to have this Court establish certain procedures relating to the service of notice of the proposed Sale. In satisfaction of the requirements of Bankruptcy Rule 2002, the Debtors propose to serve copies of the Notice of Sale annexed as **Exhibit A** hereto, the Sale Procedures annexed as **Exhibit B** hereto, the Memorandum of Sale annexed hereto as **Exhibit C** hereto, and this Motion, by First Class U.S. Mail, postage prepaid, upon (a) the Office of the United States Trustee, (b) Corporation Counsel of the City of New York, (c) Counsel to the Official Committee of Unsecured Creditors, (d) Counsel to the Secured Creditor TDBank, N.A., (e) all relevant taxing authorities, (f) all persons who are known by the Debtors to have liens upon or are asserting a security interest in the Assets, (g) all entities that have expressed to the Debtors or the Auctioneer an interest in purchasing the Assets, and (h) all known creditors.

18. Such notice is consistent with the requirements of Bankruptcy Rule 2002(c)(1) in that it describes the seller and the Assets and notifies parties of the proposed sale hearing and the time fixed for filing objections to the relief requested, including the Sale.

19. The Debtors believe that the foregoing procedures will provide sufficient notice to all parties in interest and entities with an interest in submitting a bid for the Assets.

### D. Request for Approval of Proposed Sale Free and Clear of Liens, Claims, and Interests

20. The Debtors' request this Court's authorization to sell the Assets free and clear of all liens, claims, interests and encumbrances that may be asserted (collectively, the "encumbrances").

21. In accordance with Section 363(f) of the Bankruptcy Code, a Debtor may sell property free and clear of any lien, claim or interest in such property if:

- applicable non-bankruptcy law permits sale of such property free and clear of such interest;
- such entity consents;
- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
- such interest is in bona fide dispute; or
- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (Section 363(f) is written in the disjunctive; court may approve sale "free and clear" provided that at least one of the subsections is satisfied).

22. The Debtors believe that at least one of the conditions under Bankruptcy Code Section 363(f) would be satisfied with respect to any and all encumbrances. For example, holders of any encumbrances on the Assets could be compelled to accept a money satisfaction of such encumbrances. Accordingly, the requirements of Section 363(f) are satisfied and the proposed sale should be approved "free and clear" of encumbrances.

23. The Debtors will be seeking a $500K carveout from proceeds of the sale in order to properly fund its wind-down budget which it has already provided to its secured creditor, TD Bank, N.A. Said carveout has already been consented to by the Debtors' auctioneer Guernsey's. Furthermore, to the extent any dispute arises as to ownership of the Assets, itemized sale proceeds for the particular item(s) in dispute will be escrowed upon further agreement of the parties and subject to further order of this Court.

### E. Purchaser Should Be Afforded Good Faith Purchaser Status Pursuant to Section 363(m) of the Bankruptcy Code

24. Section 363(m) of the Bankruptcy Code provides that a reversal or modification on appeal of an authorized sale of property under Section 363(b) will not affect the validity of such sale to a good faith purchaser of the property. A bankruptcy court need not make an explicit finding of good faith in order to authorize a purchase under the Bankruptcy Code. *See In re Zinke*, 97 B.R. 155, 156 (E.D.N.Y. 1989) (duty to make an explicit good faith finding prior to authorizing a sale or lease of property of the estate "has not been imposed by the Second Circuit or the United States Supreme Court"). Although the Bankruptcy Code does not provide a definition of the term "good faith purchaser", courts construing Section 363(m) have held that, to show lack of good faith, a party must demonstrate "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders." *In re Coated Sales, Inc.*, No. 89 Civ. 3704, 1990 WL 212899, at *2 (S.D.N.Y. Dec. 13, 1990); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assoc., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)). Because there is no bright line test, courts examine the facts of each case by concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

25. Pursuant to the proposed sale procedures, interested parties will be invited to submit bids for the Assets, thereby ensuring that the offer ultimately approved by the Court will yield the highest possible price for the Assets. As a result, the Debtors believe that the purchaser should be afforded the protection of Section 363(m) of the Bankruptcy Code.

**F.  Proposed Sale Procedures**

26. Bankruptcy Rule 6004 contemplates that a Debtor may conduct an auction to obtain the highest or otherwise best price for the sale of its property. In connection with this Motion, the Debtors have already retained Guersey's as their Auctioneer and proposes to invite interested parties to make offers for the Assets at an auction to be conducted on January 13, 14, and 15, 2010 to be held at the Debtors' restaurant premises in Central Park at West 67th Street, New York, NY 10023. In order for the Auctioneer to manage the bidding process, the Debtors hereby propose the procedures set forth in **Exhibit B** annexed hereto (the "Sale Procedures").

27. The Debtors submit that the proposed notice and bidding procedures are reasonable, calculated to give interested parties an opportunity to be heard on the sale and calculated to create a process designed to ensure that the estate receive the highest or best offer for the Assets. Accordingly, the Debtors request this Court's approval of such procedures.

[Remainder of this page left intentionally blank.]

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Trustee respectfully requests that this Court:

- approve the Notice of Sale and Sale Procedures;
- approve the proposed Sale; and
- grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
December 22, 2009

**AKERMAN SENTERFITT LLP**

/s/ Keith N. Costa
Keith N. Costa (KC 1213)
Susan Balaschak (SB 1901)
Kathlyn Schwartz (KS 0517)
335 Madison Ave., Suite 2600
New York, NY 10017-4636
Telephone: (212) 880-3800
Facsimile: (212) 880-3965
Email: Keith.Costa@akerman.com
　　　　Susan.Balaschak@akerman.com
　　　　Kathlyn.Schwartz@akerman.com

*Counsel for Debtors and
Debtors-in-Possession*