Norman N. Kinel
**DUVAL & STACHENFELD LLP**
101 Park Avenue, 11th Floor
New York, NY 10178
Telephone: (212) 883-1700
Facsimile: (212) 883-8883
Email: nkinel@dsllp.com

*Counsel for Official Committee of Unsecured Creditors*
*of Tavern on the Green Limited Partnership, et al.*

Hearing Date: March 11, 2010
Hearing Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
)
In re: ) Chapter 11
)
**TAVERN ON THE GREEN** ) Case No. 09-15450 (ALG)
**LIMITED PARTNERSHIP, et al.,** ) Case No. 09-15448 (ALG)
)
 Debtors. ) (Jointly Administered)
)
------------------------------------------------------------------------x

**RESPONSE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF TAVERN ON THE GREEN
LIMITED PARTNERSHIP, ET AL. TO THE (A) OBJECTION OF THE CITY OF NEW
YORK AND (B) LIMITED OBJECTION OF KAY LEROY TO THE COMMITTEE'S
MOTION TO CONVERT THESE CHAPTER 11 CASES TO CHAPTER 7**

The Official Committee of Unsecured Creditors (the "Committee") of Tavern on the Green Limited Partnership and LeRoy Adventures, Inc. (collectively, the "Debtors"), the debtors and the debtors-in-possession in the above captioned Chapter 11 cases, by and through its counsel, Duval & Stachenfeld LLP, hereby submits this response (the "Response") to the (A) "Objection of the City of New York to (I) Motion of the Official Committee of Unsecured Creditors to Convert These Chapter 11 Cases to Chapter 7 and (II) Proposed TD Bank N.A.'s Settle Order Lifting the Automatic Stay" (the "City's Objection"), and (B) "Kay LeRoy's Limited Objection to Motion of the Official Committee of Unsecured Creditors for an Order

Converting the Debtors' Chapter 11 Case to Cases under Chapter 7 of the Bankruptcy Code" (the "LeRoy Objection," and together with the City's Objection, the "Objections"), both filed on March 3, 2010. In support of the Response, the Committee respectively submits as follows:

1. In response to the Committee's motion to convert the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code [Docket No. 173] (the "Conversion Motion"), both the City of New York (the "City") and Kay LeRoy ("LeRoy") have filed objections, each seeking different relief.

2. The City supports *dismissal*, but opposes conversion of the Debtors' chapter 11 cases, with the only rationale advanced for that alternative disposition being the avoidance of administrative expenses that will be incurred by a Chapter 7 Trustee. The City does not even discuss what benefits, if any, would be achieved through dismissal rather than conversion.

3. LeRoy prefers that this Court hold the Conversion Motion in abeyance until a ruling from the Honorable Miriam Goldman Cedarbaum in the District Court for the Southern District of New York on the dispute over the Tavern Mark (as defined in the Conversion Motion), or a settlement with the City in connection therewith, after which, LeRoy contends, the Tavern Mark can be monetized to an extent "likely [to] be sufficient to not only pay all administrative claims but yield a distribution to unsecured creditors." LeRoy Objection ¶3.

4. The Committee opposes both of these courses of action and continues to believe that the Debtors' cases should immediately be converted to Chapter 7.

### **The City's Objection**

5. The City's 18-page rambling objection attempts to re-write history, attribute actions and statements to the Committee and its professionals which never occurred and were never made, and confuses events, dates, times, parties and the record to such a degree that it

would be impossible to respond to it adequately on the eve of the hearing on the Conversion Motion. Suffice it to say that the Committee disagrees with almost every point made in the City's Objection.

6. The Committee and the City do agree on at least one thing, however: that the Debtors' cases have at times suffered from "procedurally defective, inefficient . . . disorganized and ineffective handling …" City's Objection ¶5. In fact, the Committee was at times so frustrated with the administration of these cases that it considered moving for the appointment of a Chapter 11 Trustee or conversion to Chapter 7 on several occasions prior to filing the present Conversion Motion. Instead, however, the Committee – through its counsel, its financial advisors and its members – continually held the Debtors' feet to the fire in order to ensure, to the extent possible, that needed financial information was obtained and verified, that substantive decisions potentially affecting value were first analyzed and vetted by the Committee and that the Debtors be accountable for both their representations and their actions.

7. As this Court is aware, however, it was not the Committee's duty to administer these estates and the Committee and its professionals made extraordinary efforts to keep these Chapter 11 cases on track, including extensive efforts to mediate disputes between the Debtors and the City. Unfortunately, such efforts ultimately had to be abandoned, largely due to the City's extraordinary intransigence – indeed, at times, its apparent irrationality. The City's attempt to blame the Committee – whose members devoted enormous time and attention to these cases and who stand the most to lose from their poor outcome – for the lack of success of these cases is not only disingenuous but also mean-spirited.

8. Dismissal of these cases, as suggested by the City, would preclude the appointment of a fiduciary whose job it will be to maximize the Debtors' remaining assets for the

benefit of all creditors and parties in interest.  Thus, it is easy to see why the City would prefer dismissal, since it would be spared having its actions and claims scrutinized by such an independent fiduciary.  However, this ought not to serve as a basis to dismiss – and cast into chaos – necessary efforts to maximize the value of the Debtors' remaining assets.

**The LeRoy Objection**

9. As to the LeRoy Objection, although the Committee is as eager as anyone for a decision from Judge Cedarbaum, LeRoy's claim that a decision is expected "any day" unfortunately is only wishful thinking and no one (other than Judge Cedarbaum) knows when a decision might actually be rendered.  Indeed, the Committee moved cautiously with respect to the timing of filing the Conversion Motion, in part based on the hope that a decision would be rendered which might favorably alter the status quo.  However, the Committee believes that it is now inappropriate to keep the cases in Chapter 11 simply in order to await Judge Cedarbaum's decision, since in the interim the Debtors and the Committee continue to be required to address contentious issues that arise on a regular basis, such as the recently filed "Motion and Memorandum of Law of the City of New York for an Order Authorizing and Directing Payment of Outstanding Expenses Under the License Agreement," dated February 16, 2010 [Docket No. 171], which will require discovery, briefing and an evidentiary hearing to resolve.

10. As to LeRoy's reference to settlement discussions with the City that have occurred in an effort to resolve litigation over the Tavern Mark, such negotiations proved to be largely a waste of time and there has been no recent progress whatsoever in that regard.  To suggest that a settlement might be imminent – or that there are even ongoing discussions at present – is erroneous.

11. Moreover, much like TD Bank, N.A., at this point LeRoy undoubtedly would

prefer to see the Debtors, the Committee and their respective professionals continue to administer these estates while the cases continue to spiral downward through administrative insolvency, at no cost to LeRoy. As the principal equity holder in the Debtors, if LeRoy believes that these cases should remain in Chapter 11, then it would be appropriate for LeRoy to fund them – something that to date she has declined to do – or at least cause her daughter, Jennifer LeRoy, the Debtors' Chief Executive Officer, to immediately repay over $1.6 million that she indisputably owes to the Debtors' estates.[1]

12. In addition, like the City, LeRoy may be concerned that a Chapter 7 Trustee – unlike the Debtors' current professionals, who were hired by LeRoy – will fully investigate LeRoy and other members of LeRoy's family in order to determine whether there may be obligations owed by them to the Debtors' estates other than those owed by Jennifer LeRoy.

---

[1] The City's contention in the City's Objection that Jennifer LeRoy's obligation to the Debtors' estates has somehow intentionally been kept a secret from the City is yet another example of the City's behavior in these cases. Ms. LeRoy's obligation was listed by the Debtors at the very outset of these cases on their schedules of assets and liabilities and has been the subject of numerous press reports and public references.

## Conclusion

13. In sum, the Committee does not believe that either the City or LeRoy have made any meritorious arguments as to why these Chapter 11 cases should not be immediately converted to Chapter 7.

**WHEREFORE**, the Committee respectfully requests that this Court grant the Conversion Motion, overrule the Objections and grant the Committee such other and further relief as is just and proper.

Dated: New York, New York
March 3, 2010

**DUVAL & STACHENFELD LLP**

By: /s/Norman N. Kinel
Norman N. Kinel
101 Park Avenue, 11th Floor
New York, New York 10178
Telephone: (212) 883-1700
Facsimile: (212) 883-8883
Email: nkinel@dsllp.com

*Counsel for Official Committee of Unsecured Creditors of Tavern on the Green Limited Partnership, et al.*