Hearing Date & Time: April 28, 2011 at 11:00 a.m.
Objection Deadline: April 26, 2011 at 4:00 p.m.

Alan E. Marder, Esq.
Jessica G. Berman, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

*Counsel for Jil Mazer-Marino Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

TAVERN ON THE GREEN, L.P. and LEROY
ADVENTURES, INC.,

                                              Debtors.
---------------------------------------------------------------X

Chapter 11

09-15450 (ALG)
09-15448 (ALG)

(Jointly Administered)

## MOTION OF CHAPTER 7 TRUSTEE, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF STIPULATION RESOLVING LITIGATION

Jil Mazer-Marino, trustee (the "**Trustee**") of the chapter 7 bankruptcy estates of Tavern on the Green, L.P. and LeRoy Adventures, Inc. (the "**Estates**"), the above-captioned debtors (the "**Debtors**"), by her attorneys Meyer, Suozzi, English & Klein, P.C., hereby moves this Court, pursuant to Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 9019, for entry of an order approving the *Stipulation Resolving Disputes Between Tavern On The Green Limited Partnership and Leroy Adventures, Inc. and The City Of New York and The New York City Department Of Parks And Recreation* (the "**Stipulation**"). In support of her motion, the Trustee sets forth as follows:

## INTRODUCTION

1. The Trustee is pleased to report that after more that a year of face to face meetings, conference calls, and myriad drafts of documents, the City of New York (the "**City**") and the Estates have resolved their dispute respecting the Tavern on the Green trademark and registrations therefore. Tavern on the Green was one of the most famous, highest grossing restaurants in the world. The resulting settlement provides the Estates with valuable rights that the Trustee can promptly monetize.

2. As set forth in greater detail below, the settlement is embodied in the Stipulation, attached hereto as Exhibit "1" and the Use Agreement, attached to the Stipulation as Exhibit "A" (the "**Use Agreement**"). The Stipulation and the Use Agreement parse the City's and the Estates' relative rights to use the name "Tavern on the Green" and determines the ownership of the two federal trademark registrations -- the registration for restaurant services and the registration for oils and dressings. Simply stated, the purchaser of the Trustee's interest in the Use Agreement (the "**Concurrent User**") can use the name "Tavern on the Green" for restaurants, provided that, among other things: (i) the name "Tavern on the Green" is coupled with a location or geographic identifier (*e.g.*, Tavern on the Green - Las Vegas); (ii) the restaurant is located outside an area comprising New York, New Jersey, Connecticut and certain parts of Pennsylvania; and (iii) the restaurant complies with certain quality control requirements. The City may use the name Tavern on the Green for restaurants within the City. With respect to products, the Concurrent User may use the name "Tavern on the Green" for certain products such as food, home furnishings, apparel and accessories; provided, that the products meet certain standards articulated in the Use Agreement. Additionally, products sold in the City and certain

2

counties in New York and New Jersey can only be sold with the City's consent and will be subject to a royalty payment to the City.

3. The settlement contemplates that the Trustee will sell the Use Agreement in a Bankruptcy Code section 363 sale and sale proceeds, net of usual and customary sale costs, will be used to pay TD Bank, N.A.'s secured claims. Net proceeds remaining after TD Bank, N.A.'s claim is paid would be divided 75% to the Estates and 25% to the City.

4. The Trustee is advised by her professionals that the bundle of rights included in the Use Agreement is valuable and is likely to generate significant interest from potential purchasers in the marketplace. Therefore, the settlement embodied in the Stipulation provides the Estates with a realistic opportunity to monetize promptly its most valuable remaining asset for the benefit of the Estates' creditors.

5. The Estates' position today stands in stark contrast to the state of affairs as of the conversion date. On March 10, 2010, one day before these cases were converted to chapter 7, the United States District Court for the Southern District of New York (the "**District Court**") rendered a decision that among other things granted the City's request that the Estates' trademark registration for restaurant services be cancelled.

6. Moreover, as of the conversion date, substantially all of the Estates' assets had been liquidated and the proceeds distributed to TD Bank, N.A., the Debtors' secured lender. Accordingly, the Estates had limited resources to fund an appeal of the District Court's decision or fund a trial after remand should the Estates be successful on the appeal.

7. The Trustee submits that the settlement embodied in the Stipulation and the Use Agreement is in the best interests of the Estates and should be approved by the Court. Absent the settlement, the Estates would have no option but to litigate the appeal of the District Court's

decision. If successful in the appeal (and success is not assured), the Estates would be faced with a trial, which could be expected to be lengthy and expensive and the results of which would be uncertain. Also, as time passes, the trademark's association with a fine dining experience could become attenuated, adversely affecting the value of the trademark. Therefore, even if the Estates were successful at trial, the Estates' ability to monetize the trademark could be compromised. In contrast, the settlement allows the Estates to avoid the time and expenses of litigation, avoid the uncertainty of litigation, and prevent the erosion of the value of the trademark. Moreover, the settlement provides the Estates with a promising opportunity to realize significant value promptly from the name "Tavern on the Green" and to move forward with the administration of these Estates.

## BACKGROUND FACTS

### A. General

8. On September 9, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9. The Debtors' cases were converted to cases under chapter 7 of the Bankruptcy Code (the "**Chapter 7 Cases**") by order of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") dated March 10, 2010, and on March 11, 2010, the Trustee was appointed interim Chapter 7 Trustee of the Debtors' estates pursuant to Bankruptcy Code section 701(a).

10. On May 20, 2010, the Court approved the Trustee's application to retain Streambank LLC ("**Streambank**") to act as an intellectual property disposition firm in the Debtors' Chapter 7 Cases.

11. On May 28, 2010, at a duly convened meeting pursuant to Bankruptcy Code section 341, the Trustee qualified as permanent trustee of the Debtors' Estates pursuant to Bankruptcy Code section 702(d).

B. **The Adversary Proceedings**

12. On October 21, 2009, two adversary proceedings were filed in the Debtors' jointly administered cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. These adversary proceedings are: (1) *The City of New York v. Tavern on the Green, L.P. and Leroy Adventures, Inc.*, Adv. Pro. No. 09-01538 (the "**City's Adversary Proceeding**"); and (2) *Tavern on the Green, L.P. and Leroy Adventures, Inc. v. New York City Department of Parks & Recreation*, Adv. Pro. No. 09-01540 (the "**Debtors' Adversary Proceeding**," and together with the City's Adversary Proceeding, the "**Adversary Proceedings**").

13. The Adversary Proceedings involve the same issue. In the Adversary Proceedings, the parties asserted conflicting claims with respect to the right to use and the ownership of (1) the trademark "Tavern on the Green" for "Restaurant Services" (Reg. No. 1,154,270) (the "**Restaurant Mark**"), and (2) the trademark "Tavern on the Green" for cooking oils, salad dressings, and dipping oils (Reg. No. 3,494,658) (the "**Oil and Dressing Mark**," and together with the Restaurant Mark, the "**Marks**") and requested equitable relief.

C. **The District Court Cases**

14. On November 6, 2009, the City moved to withdraw the reference of the Adversary Proceedings from the Bankruptcy Court to the District Court. The City's and Debtors' Adversary Proceedings were assigned the civil court docket numbers 09-9224 and 09-9254, respectively (each, a "**District Court Case**" and collectively, the "**District Court Cases**").

5

15. On December 2, 2009, the District Court granted the City's motion to withdraw the reference of the Adversary Proceedings, and the District Court exercised jurisdiction over those proceedings.

16. On December 7, 2009, the Debtors filed a motion for summary judgment in District Court Case number 09-9224.

17. On December 7, 2009, the City filed an opposition to the Debtors' summary judgment motion and filed a cross-motion for summary judgment in District Court Case number 09-9224.

### D. The District Court Decisions

18. Pursuant to a Decision and Order dated March 10, 2010 (the "**March 10 Order**"), and entered on the dockets of each of the District Court Cases on that same day, Judge Miriam Goldman Cedarbaum denied the Debtors' motion for summary judgment and partially granted the City's summary judgment motion. The District Court Judge held that (1) the City has the right, under New York common law, to the trade name "Tavern on the Green" for its historic restaurant in Central Park; and (2) the Debtors' registration of the Restaurant Mark should be cancelled.

19. Specifically, the District Court Judge examined the Debtors' argument that the Debtors have "incontestable" rights in the Restaurant Mark, pursuant to Section 1065 of the Lanham Act, because of the Debtors' continuous use for more than five years after its registration and held that:

> (1) the City had prior rights to the trade name "Tavern on the Green" under New York law because the City demonstrated that prior to the Debtors' registration of the Restaurant Mark in 1981, the City chose the name of the restaurant, chose each concessionaire and made significant investments to ensure the success of the restaurant, such that the public closely associated

the trade name "Tavern on the Green" with a building owned by the City and located in Central Park; and

(2) the City demonstrated continuous use of the trade name "Tavern on the Green" since 1934, excluding temporary closings of the restaurant for renovations, which were not sufficient to break the chain of use.

20. Further, the District Court Judge examined the City's allegation that the Restaurant Mark was obtained by fraud and held that the Debtors' trademark application for the Restaurant Mark was obtained fraudulently because the application contained knowing misstatements and omissions, including a misstatement as to the date of first use.

E. The Appeals

21. Immediately upon her appointment, the Trustee attempted to engage the City in negotiations in an effort to preserve the status quo pending a determination of the Appeal of the March 10, 2010 Order and to streamline the appeal process to save the Estates from significant litigation expenses. As a result, the Trustee and the City entered into a stipulation (the "**Appeal Stipulation**") which provided, in part, that:

(a) the City and the Debtors agreed to jointly request that the District Court (i) expressly direct, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that the March 10, 2010 Order be a final judgment, or (ii) in the alternative, to make an express finding, pursuant to 29 U.S.C. § 1292(b), that the March 10, 2010 Order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the March 10, 2010 Order may materially advance the ultimate termination of the litigation;

(b) the City and the Debtors agreed to jointly request that the District Court direct that neither party be permitted to take any action or intended action: (1) to sell, exchange, barter, assign, transfer, give, or otherwise dispose of the Restaurant Mark; (2) to pledge, escrow, hypothecate, mortgage, grant or create a security interest in or lien upon the Restaurant Mark; or (3) to transfer any interest in the Restaurant Mark, including, without limitation, any licensing rights to the Restaurant Mark, except: (i) to the extent set forth in a writing signed by the City and the Debtors; and (ii) the City and its concessionaires may continue to use the name "Tavern on the Green" as the name of its historic restaurant in Central Park, New York, pending the Appeal; and

(c) the City and the Debtors agreed to jointly request that the District Court revise the March 10, 2010 ruling cancelling the Restaurant Mark and, instead, grant the City the alternative relief of an assignment of the Restaurant Mark and any goodwill appurtenant thereto from the Debtors to the City.

22. As a result of the Appeal Stipulation:

(a) the Debtors could appeal the March 10, 2010 Order without delay or risk that the Debtor's request for leave to appeal would be denied;

(b) the Debtors were spared the (i) expense of seeking a stay pending appeal, (ii) the risk that the Debtors would not succeed in obtaining a stay, and (iii) the cost of the bond or undertaking that may have been imposed on the Estates as a condition to the issuance of a stay pending appeal; and

(c) the Debtors eliminated the uncertainty as to ownership of the Restaurant Mark and prevented any interlopers from attempting to register "Tavern on the Green" while the City and the Debtors engaged in protracted litigation.

23. By order dated April 8, 2010 (the "**April 8 Order**") the District Court amended its March 10 Order to substantially conform to the Appeal Stipulation.

24. The Court's Final Judgment awarding the aforesaid relief was entered on the docket of each of the District Court Cases on April 9, 2010.

25. On May 5, 2010, the Trustee filed Notices of Appeal in the District Court Cases with the United States Court of Appeals for the Second Circuit (the "**Court of Appeals**") and received Docket Number 10-1796 in regard to *City of New York v. Jil Mazer-Marino as Interim Chapter 7 Trustee for Tavern on the Green, L.P. and Leroy Adventures, Inc.* and Docket Number 10-1802 in regard to *Jil Mazer-Marino as Interim Chapter 7 Trustee for Tavern on the Green, L.P. and Leroy Adventures, Inc. v. New York City Department of Parks & Recreation* (collectively, the "**Appeals**," and together with the Adversary Proceedings and the District Court Cases, the "**Litigation**").

26. On August 11, 2010, in recognition of the parties' ongoing negotiations, the parties filed a stipulation withdrawing the Appeals without prejudice, but providing that the Trustee may reinstate the Appeals. On August 12, 2010, this stipulation was so-ordered by the Court of Appeals.

**F. The Settlement**

27. After entry of the April 8 Order, the Trustee engaged the City in negotiations to settle the Litigation. In that regard, the Trustee, MSEK, Streambank, the City, and TD Bank participated in countless face to face meetings and telephone conferences to develop a framework for settling the Litigation. After several months of negotiations the parties agreed upon a term sheet embodying the general terms for settlement.

28. Although the term sheet embodied all of the elements of the settlement, the transformation of the term sheet to a final Stipulation and Use Agreement required more than six additional months of negotiations, involved no less than 150 conference calls among the parties and numerous drafts of documents. Throughout the process, negotiations proved difficult due to, among other things, (a) the complex intellectual property issues that the structure of the settlement created and (b) the divergent interests of the Estates and the City (*i.e.*, the Estates' sole interest in maximizing the monetary value of the trademark assets versus the City's interest in the ultimate use of the trademark and the impact on the City).

29. In summary, under the Stipulation and Use Agreement, the parties agreed that the City would own the federal registration for the Restaurant Mark but that the City would agree that the Concurrent User (*i.e.*, the Estate's assignee) could concurrently use modified trademarks for restaurant services along with the current logo outside of the "restaurant restricted area" (*i.e.*, the tri-state area and parts of Pennsylvania). Regarding the use of the name "Tavern on the Green" for products, the parties agreed that the Concurrent User could use the name, provided

9

that such products could not be sold in the "product restricted area" (*i.e.*, the City, as well as certain counties located in the States of New York and New Jersey) without the City's consent and payment of a royalty and subject to other limitations and conditions. The parties also agreed the Estates could transfer their rights in the Use Agreement and the Oil and Dressing Mark to a single buyer in a Bankruptcy Code section 363 sale, the proceeds of which would be paid to the Estates, which in turn would distribute the net proceeds first to TD Bank in satisfaction of TD Bank's claims, and thereafter, 75% to the Estates and 25% to the City.

30. Finally, on or about April 14, 2011, the parties reached agreement on the final form of Stipulation and the accompanying Use Agreement resolving the Litigation.

31. The relevant portions of the Stipulation are as follows[1]:

(a) The Trustee, on behalf of the Estates, shall execute an assignment transferring ownership of the Restaurant Registration to the City and shall also transfer ownership of the domain names and URLs www.tavernonthegreen.com and www.tavernonthegreen.net to the City.

(b) The Estates will continue as the registered owner of the Oil and Dressing Mark. The Trustee's and the Estates' rights with respect to the Oil and Dressing Mark shall be governed by the Use Agreement.

(c) The Trustee intends to conduct an auction sale of the Use Agreement and the Oil and Dressing Mark (the "**Rights Sale**").

(d) Upon the Effective Date, the Estates shall be deemed to own the Oil and Dressing Mark and shall be fully vested with the right to use and register the Oil and Dressing Mark, subject to the terms, rights, limitations and obligations of the Use Agreement.

(e) Upon the Effective Date, TD Bank's Lien shall be of no further force and effect with respect to the City's ownership and use of the Restaurant Mark. TD Bank's Lien shall continue, in full force and effect, in and to the Estates' interest in the Use Agreement, the Oil and Dressing Mark, the

---

[1] Capitalized terms not defined in this paragraph and subparagraphs have the meanings ascribed to them in the Stipulation. The following is a summary of the terms and conditions of the Stipulation and is not intended to alter the terms of the Stipulation. Any discrepancy between the summary and the Stipulation shall be governed by the Stipulation.

Concurrent User's Marks and the Product Mark and any proceeds of the Rights Sale.

(f) Promptly after the Effective Date, the Trustee shall file appropriate notices to discontinue the Appeals with prejudice and without costs and the City and Trustee shall present to Judge Cedarbaum for her consideration a stipulation dismissing the remaining claims in the District Court Cases with prejudice and without costs.

(g) The City acknowledges that the Use Agreement and the Oil and Dressing Mark are fully transferrable by the Estates and that the Trustee has sole authority to sell the Use Agreement and the Oil and Dressing Mark, subject to the provisions of the Stipulation; provided:

(i) The Trustee agrees that, absent the City's prior written consent, the Use Agreement shall not be sold to a third party unless the consideration for such Use Agreement equals or exceeds $500,000.00.

(ii) The Trustee agrees that the last date for the Trustee to seek Bankruptcy Court approval of a sale of the Use Agreement is the date that is nine (9) months after the Effective Date or such later date as the City may agree to in writing.

(h) All Net Proceeds from the Rights Sale shall be deposited into the separate segregated account set up by the Trustee for such purpose and distributed as follows:

(i) The first Net Proceeds shall be distributed to TD Bank until the TD Bank Claim (to the extent it is an allowed secured claim against the Estates, following application on notice to creditors, including the City, by TD Bank for allowance of such Claim) is paid in full. All Net Proceeds from the Rights Sale shall be subject to TD Bank's Lien until such time as the TD Bank Claim is paid in full.

(ii) The remaining Net Proceeds shall be divided between the City and the Estates. The Trustee shall retain seventy five percent (75%) of Net Proceeds for the Estates (for distribution pursuant to the priorities established in Bankruptcy Code section 706). The remaining 25% shall be distributed by the Trustee to the City.

(i) For purposes of the Stipulation, Net Proceeds shall mean the total gross consideration paid to the Estates from any Rights Sale, less the reasonable and customary costs of sale, including commissions and expenses of Streambank, LLC, applicable taxes, if any, and break-up fees, expense reimbursements or other bidder protections as approved by the Bankruptcy Court and subject to TD Bank's approval, which approval shall not be

11

unreasonably withheld, and the Trustee's commissions and reasonable attorneys' fees incurred in connection with the Rights Sale.

(j) The City agrees that the Trustee may use images of Central Park, New York, and the Central Park Location, and may make reference to the historic operations of the restaurant Tavern on the Green; provided such images and references are used solely by the Trustee and parties retained by the Trustee to market the Use Agreement and such uses are consistent with the terms of the Use Agreement.

32. In broad brush terms, the Use Agreement delineates each party's use of the name "Tavern on the Green" for restaurant services and products. Below is a brief summary of those provisions. In addition to the terms summarized below, the Use Agreement includes numerous detailed provisions respecting, among other things, enforcement, breach, term and termination, licensing, assignment, and infringement, in addition to other common contract provisions, such as notice and choice of law:[2]

(a) **Restaurant Mark and Concurrent User's Mark.** The City owns the Restaurant Registration and the Restaurant Mark and all associated goodwill, and retains and possesses the rights to (a) use and register the Restaurant Mark, (b) operate a restaurant and any other facility offering Central Park Services or any other City services using the Restaurant Mark at the Central Park Location, (c) operate restaurants using the Restaurant Mark at other locations within the five boroughs of the City, and (d) use and register the Restaurant Mark for all City services or Central Park Services provided at the Central Park Location. So long as the Use Agreement remains in effect, the City shall not use or authorize others to use the Restaurant Mark and the Current Logo for restaurant services outside the five boroughs of the City and, as set forth in Section 2.04 of the Use Agreement, the Concurrent User shall use the Restaurant Mark and Logo only outside of the Restaurant Restricted Area.

(b) The City owns and shall be entitled to register the Current Logo for restaurant services, catering services and bar services and for all Central Park Services.

---

[2] All capitalized terms not defined in this paragraph and subparagraphs have the meanings ascribed in the Use Agreement. The following is a brief summary of the Use Agreement and is not intended to change or modify the Use Agreement. Any discrepancy between the summary and the Use Agreement shall be governed by the Use Agreement.

(c) The City and the Concurrent User agree that the City shall not object to the Concurrent User's use of the Concurrent User's Marks and the Current Logo for restaurant services, provided such use conforms to certain limitations.

(d) **Oil and Dressing Mark**. The Concurrent User owns the Oil and Dressing Registration and Mark and associated goodwill and possesses the right to use and register such mark in the United States, subject to the rights granted to the City and subject to all of the restrictions and limitations contained in the Use Agreement.

(e) **Product Mark**. During the Product Mark Registration Period, (a) the Concurrent User has the exclusive right to apply to register the Mark and the Current Logo for products and services for which the Concurrent User has the bona fide intention to use the Mark in the United States, so long as such products and services are reasonably related to restaurant and catering operations, food, food preparation and food service items, home furnishings, décor, apparel and accessories, and (b) the City shall be prohibited from using the Mark and the Current Logo for products other than Central Park Goods, Central Park Services or City services. At the conclusion of the Product Mark Registration Period, the Concurrent User shall retain ownership of all Product Mark Registrations issued to the Concurrent User during the Product Mark Registration Period for the term of any such registrations, including all renewals and extensions, and shall own and have the exclusive right to use such Product Marks. After the Product Mark Registration Period, Concurrent User shall withdraw any pending applications for which no registration has issued, and the City shall have the right to register Product Marks and the Current Logo for any goods and services where no Product Mark Registration was issued during the Product Mark Registration Period.

(f) The City agrees not to challenge the Concurrent User's (a) use and registration of the Oil and Dressing Mark, (b) Product Mark Registrations issued during the Product Mark Registration Period and (c) use of the Product Marks registered pursuant to such Product Mark Registrations provided such use is in compliance with the terms and conditions of the Use Agreement.

(g) Use of the Product Marks, the Current Logo and the Oil and Dressing Mark by the Concurrent User shall be subject to certain limitations.

(h) The City shall be permitted to produce Central Park Goods solely for sale at the Central Park Location and at any City Retail Outlet. The Central Park Goods shall not include any food products, cooking utensils, or tabletop products (*e.g.*, eating utensils, table linens, and placemats), but does include souvenir mugs, cups, glasses, plates, dishes, spoons and similar souvenir items.

(i) Either Party, at any time, in its sole and absolute discretion, may elect to develop and utilize its own exclusive logo consistent with the other terms and conditions of this Agreement so long as such logos or marks are otherwise consistent with the terms and intent of this Agreement and would not otherwise infringe on the rights of the other Party or cause confusion, mistake or deception on the part of consumers.

(j) The City shall own and have exclusive right to use the internet domain names or URLs www.tavernonthegreen.com and www.tavernonthegreen.net and any other URLs consisting of "Tavern on the Green" alone with any other TLD extension. Concurrent User may register and use other domain names utilizing "Tavern on the Green" in connection with uses permitted under this Agreement provided that the domain name include language differentiating the domain names from www.tavernonthegreen.com and www.tavernonthegreen.net.

## REQUEST FOR RELIEF

33. By this Motion, the Trustee requests that this Court approve the settlement embodied in the Stipulation. The statutory predicate for the relief requested is Bankruptcy Code section 105(a), as complemented by Bankruptcy Rule 9019(a). This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

34. Rule 9019(a) of the Bankruptcy Rules provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

35. To approve a compromise and settlement under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise and settlement is in the best interests of the debtor's estate. *See In re Chemtura Corp.*, Case No. 09-11233, 2010 WL 4272727, at * 21 (Bankr. S.D.N.Y. October 21, 2010) (citing *In re Adelphia Comm'ns Corp.*, 327 B.R. 143 (Bankr.S.D.N.Y. 2005), *adhered to on reconsideration*, 327 B.R. 175 (Bankr. S.D.N.Y. 2005), *aff'd*, 337 B.R. 475 (S.D.N.Y. 2006), *aff'd by summary order*, 224 Fed. Appx. 14 (2d Cir. 2006),

*cert. denied*, 552 U.S. 941 (2007) ("*Adelphia DoJ/SEC Settlement Decision*")); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994). A settlement must be "fair and equitable" to be in the best interest of the estate. *In re Chemtura*, 2010 WL 4272727, at * 21 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ("*TMT*")). In order to determine whether a settlement is fair and equitable, the court should evaluate the probability of success in a litigation and the court should make

> [A]n educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*In re Chemtura*, 2010 WL 4272727, at * 21 (quoting *TMT*, 390 U.S. at 424-25).

36. However, in determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see In re Chemtura*, 2010 WL 4272727, at * 21 (quoting *In re W.T. Grant*, 699 F.2d at 608; *In re Purofied Down*, 150 B.R. at 522; *Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.)*, 103 B.R. 420, 422 (S.D.N.Y.1989)) ("A bankruptcy court need not conduct an independent investigation," nor is it "necessary for the court to conduct a 'mini-trial.'"); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009) (the court is not required to "conduct a mini-trial to 'decide the numerous questions of law and fact raised . . . but rather to canvass the issues' raised by the parties"); *In re Tower Automotive, Inc.*, 342 B.R. 158, 164 (Bankr. S.D.N.Y. 2006) ("A court assesses a

settlement by determining whether it 'fall[s] below the lowest point in the range of reasonableness.'").

38. "The 'reasonableness' of a settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not of fraud or collusion." *Ionosphere Clubs*, 156 B.R. at 426-27; *see In re Stone Barn*, 405 B.R. at 75 (citing *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)).

38. Further, in making its decision, the court may consider the opinion of the trustee that the settlement is fair and reasonable. *In re Chemtura*, 2010 WL 4272727, at * 21 (citing *TMT*, 390 U.S. at 424); *accord In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *see In re Adelphia*, 327 B.R. at 159 ("[T]he court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'"). In addition, the bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see In re Tower Automotive*, 342 B.R. at 164 ("there is a general presumption in favor of settlements"); *Shugrue*, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

39. Here, the Trustee believes the Stipulation represents a fair and reasonable compromise of the Litigation. The Trustee's belief is based upon a number of different factors, as discussed below.

40. <u>Complexity, Expense and Likely Duration of Litigation.</u> The Trustee believes that pursuing the Litigation would likely be a long, expensive battle. Step one of the process would be litigating the Appeal of the District Court's decision granting summary judgment in favor of the City and denying summary judgment to the Estates. Litigating the appeal will require extensive briefing and oral argument before the Second Circuit Court of Appeals. The briefing itself would likely take months.

41. <u>Winning the Appeal May to Lead to Further Litigation.</u> Theoretically, the Court of Appeals could reverse the District Court's decision awarding summary judgment to the City and, instead, affirmatively award summary judgment in favor of the Estates. This would entail the Court of Appeals finding that, among other things, the City did not have prior use of the trade name "Tavern on the Green," the City did not demonstrate continuous use of the trade name "Tavern on the Green" since 1934, the Debtors did not engage in fraud when applying to register the Restaurant Mark, and the Debtors have an incontestable right to the Restaurant Mark. However, another possible outcome is that the Court of Appeals' reversal of the District Court's award of summary judgment in favor of the City will be coupled with a remand of the matter back to the District Court for trial (as opposed to an affirmative grant of summary judgment in favor of the Estates). Therefore, the Estates' success in the Appeal may lead to further litigation and not a resolution of the dispute between the City and the Estates.

42. <u>A Trial on the Issues Will be Expensive and Protracted.</u> Litigation will entail discovery, motion practice, and, potentially, a full blown trial. The Trustee believes that if this matter proceeds to trial, the Litigation may not be concluded for years. As for cost, the Trustee believes that appropriate legal counsel may be available to perform the relatively limited tasks associated with the Appeal on a fixed or reduced fee basis. However, based on conversations

with several law firms, it is uncertain that the Estates could retain competent trial counsel at a reduced rate. Although retention of a firm on a contingency basis is possible, the contingency fees can be expected to be relatively high, and, in any event, the Estates likely would have to guarantee to fund litigation expenses in advance. The Estates have no unencumbered assets to fund litigation expenses.

43. <u>Delay in a Determination on the Issues at Trial Could Prejudice the Estates as Delay Could Result in Loss of Value of the Marks.</u> If the Estates are successful in the Appeal and at trial, the Estates would be declared the owner of the Marks' registrations. That ownership interest would be an asset that the Estates could sell. However, in the extended time frame required for litigation, the Marks would be at risk of declining in value. The Trustee believes that the name "Tavern on the Green" currently has substantial value because of its association with the operation of one of the most famous, highest grossing restaurants in the world. In the coming years, the association between the name Tavern on the Green and fine dining may become more attenuated. Accordingly, the goodwill associated with the Restaurant Mark (*i.e.*, the monetary value of the trademark) could erode. Therefore, even if the Estates are wholly successful at trial and obtain the sole and exclusive right to use the Restaurant Mark, it may be a pyrrhic victory because, due to the delay, the Restaurant Mark may, at that future date, be worth very little.

44. <u>The Likelihood of Success on the Merits is Uncertain.</u> One court has already determined that the uncontroverted facts support summary judgment in favor of the City. Although the Trustee disagrees with that decision, it does not alter the fact that, on appeal, the Estates will have the burden of proof to establish that the District Court's findings and holdings are erroneous.

45. <u>In Comparison to Further Litigation and Considering All of the Relevant Facts, the Settlement is in the Best Interests of the Debtors' Estates and Creditors.</u> As set forth above, litigation will be time consuming, expensive, uncertain, and even if successful could provide the Estates with little value. In contrast, the settlement eliminates the expense, delay and uncertainty of litigation and provides the Estates with an immediate opportunity to monetize the value of the Marks. Under the settlement, the Trustee is authorized to sell the Use Agreement. The Trustee believes that the bundle of rights embodied by the Use Agreement could be extremely valuable to a variety of buyers. For example, the purchaser of the Use Agreement could open restaurants in Las Vegas, Orlando and other tourist destinations, or use the name in connection with a line of frozen food products, tableware, and other goods.

46. For the reasons set forth above, the Trustee believes the settlement falls well within the range of reasonableness and that the Stipulation should therefore be approved.

## **NOTICE**

47. The Trustee has provided notice of this motion, including a copy of the Stipulation, to the City, TD Bank, N.A., the United States Trustee, and all creditors and parties-in-interest in these cases and submits that such notice is adequate under Rules 9019 and 2002 and no other or further notice is required.

WHEREFORE, for all of the foregoing reasons, the Trustee respectfully requests that the Court approve the Stipulation annexed hereto as Exhibit "1," and grant the Trustee such other and further relief as may be just and proper.

Dated: Garden City, New York
April 15, 2011

MEYER, SUOZZI, ENGLISH & KLEIN P.C.
*Counsel to the Chapter 7 Trustee*

By: /s/ *Alan E. Marder*
Alan E. Marder, Esq.
Jessica G. Berman, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Phone: (516) 741-6565
Fax : (516) 741-6706