**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| | |
| **TAVERN ON THE GREEN LIMITED** | **09-15450 (ALG)** |
| **PARTNERSHIP and LEROY ADVENTURES,** | **09-15448 (ALG)** |
| **INC.,** | |
| | **(Jointly Administered)** |
| **Debtors.** | |

-----------------------------------------------------------------X

### STIPULATION RESOLVING DISPUTES BETWEEN TAVERN ON THE GREEN LIMITED PARTNERSHIP AND LEROY ADVENTURES, INC. AND THE CITY OF NEW YORK AND THE NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION

This Stipulation is entered into on this 15th day of April, 2011, by and between the City of New York, the New York City Department of Parks and Recreation (collectively, the "**City**") and Jil Mazer-Marino, in her capacity as Chapter 7 Trustee for the jointly administered chapter 7 estates (the "**Estate"**) of Tavern on the Green Limited Partnership ("**TOG**") and LeRoy Adventures, Inc. ("**LeRoy**," and together with TOG, the "**Debtors**").

WHEREAS, on or about May 12, 1981, TOG's predecessor registered the trademark "Tavern on the Green" for "Restaurant Services" (Registration No. 1,154,270) with the United States Patent & Trademark Office (the "**Restaurant Mark**");

WHEREAS, on or about April 11, 2007, TOG filed an application with the United States Patent & Trademark Office to register the name "Tavern on the Green" for "Oils for cooking and for food, namely, flavored oils, dipping oils" and "Salad dressings; condiments, namely sauces, dipping sauces" for which the United States Patent & Trademark Office issued a registration (Registration No. 3,494,658) on September 2, 2008 (the "**Oil and Dressing Mark**");

WHEREAS, on September 9, 2009, the Debtors filed voluntary petitions for reorganization with the Bankruptcy Court for the Southern District of New York (the

"**Bankruptcy Court**") pursuant to Chapter 11 of the Bankruptcy Code (Case No. 09-15450 (ALG) and Case No. 09-15448 (ALG));

WHEREAS, on October 21, 2009, the City commenced an adversary proceeding (the "**City's Adversary Proceeding**"), against the Debtors (Adv. Pro. No. 09-01538) which contained four claims for relief:

    A.    Claim One: for a declaratory judgment that the City is the exclusive owner of the Restaurant Mark and Oil and Dressing Mark;

    B.    Claims Two through Four: to cancel the Restaurant Mark and the Oil and Dressing Mark or, alternatively, to require TOG to assign the Restaurant Mark and Oil and Dressing Mark to the City;

WHEREAS, on October 21, 2009, the Debtors commenced an adversary proceeding (the "**Debtors' Adversary Proceeding**," and together with the City's Adversary Proceeding, the "**Adversary Proceedings**"), against the City (Adv. Pro. No. 09-01540), seeking, <u>inter alia</u>, a declaratory judgment that the Debtors are the exclusive owners of the Restaurant Mark;

WHEREAS, on November 6, 2009, the City moved the United States District Court for the Southern District of New York to withdraw the reference to the Bankruptcy Court of the Adversary Proceedings;

WHEREAS, the City's and Debtors' Adversary Proceedings were assigned civil court docket numbers 09 CIV 9224 and 09 CIV 9254, respectively (each, a "**District Court Case**" and collectively, the "**District Court Cases**");

WHEREAS, on December 4, 2009, the United States District Court for the Southern District of New York withdrew the reference to the Bankruptcy Court of the Adversary Proceedings;

WHEREAS, the City and the Debtors each moved for summary judgment in its respective District Court Cases;

WHEREAS, on March 10, 2010, the Honorable Miriam Goldman Cedarbaum issued an opinion (the "**Opinion**"): (a) denying the Debtors' motion for summary judgment; (b) granting the City's motion to the extent that the City sought a declaration that it has the right, under New York law, to use the name "Tavern on the Green" for its historic restaurant in Central Park, New York; and (c) directing the cancellation of the Restaurant Mark issued to TOG's predecessor;

WHEREAS, on March 10, 2010, the Bankruptcy Court converted the Debtors' Chapter 11 bankruptcy cases to Chapter 7 bankruptcy cases;

WHEREAS, on March 11, 2010, Jil Mazer-Marino (the "**Trustee**"), was appointed as interim Chapter 7 Trustee for the Estate and on May 28, 2010, at a duly convened meeting pursuant to Bankruptcy Code section 341, qualified as permanent trustee of the Estate pursuant to Bankruptcy Code section 702(d);

WHEREAS, by order dated April 8, 2010 (the "**April 8 Order**") and entered on the dockets of each of the District Court Cases on April 9, 2010, Judge Cedarbaum amended her Opinion, at the request of the Trustee, on behalf of the Estate, and the City and, in accordance with a stipulation entered into by the parties, such that the provision in the Opinion directing cancellation of the Restaurant Mark was deleted, and the Court directed that the Restaurant Mark and any good will appurtenant thereto be assigned from the Estate to the City subject to the rights of the parties to appeal all aspects of the April 8 Order and further ordered that, pending the outcome of the Appeal, that the City and the Trustee, on behalf of the Estate, shall not take any action or intended action to:

A.   sell, exchange, barter, assign, transfer, give, or otherwise dispose of the Restaurant Mark;

B.   pledge, escrow, hypothecate, mortgage, grant or create a security interest in or lien upon the Restaurant Mark; or

C.　　transfer any interest in the trademark, including, without limitation, any licensing rights to the Restaurant Mark, except: (i) to the extent set forth in a writing signed by the City and the Trustee; and (ii) the City and its concessionaires may continue to use the name "Tavern on the Green" as the name of its historic restaurant in Central Park, New York;

WHEREAS, the Court's Final Judgment awarding the aforesaid relief was entered on the docket of each of the District Court Cases on April 9, 2010;

WHEREAS, on May 5, 2010, the Trustee filed Notices of Appeal in the District Court Cases with the United States Court of Appeals for the Second Circuit and received Docket Number 10-1796 in regard to *City of New York v. Jil Mazer-Marino as Interim Chapter 7 Trustee for Tavern on the Green, L.P. and Leroy Adventures, Inc.* and Docket Number 10-1802 in regard to *Jil Mazer-Marino as Interim Chapter 7 Trustee for Tavern on the Green, L.P. and Leroy Adventures, Inc. v. New York City Department of Parks & Recreation* (collectively, the "**Appeals**," and together the Adversary Proceedings, District Court Cases, and Appeals are the "**Litigation**");

WHEREAS, on May 19, 2010, the Trustee filed a Motion to Consolidate on the dockets of each of the Appeals, which motion was granted under Docket Number 10-1796 on May 26, 2010;

WHEREAS, on May 20, 2010, an order was entered by the Bankruptcy Court authorizing the Trustee to retain Streambank, LLC to provide marketing, disposition and other services in connection with the Restaurant Mark, Oil and Dressing Mark and other intellectual property;

WHEREAS, TD Bank, N.A. has a first priority perfected lien on and security interest in all of the Estate's assets, including without limitation, a lien on and security interest in the Estate's interest in and to the Restaurant Mark and the Oil and Dressing Mark ("**TD Bank's Lien**");

WHEREAS, as of the date hereof, TD Bank, N.A. asserts claims against the Estate, which as of March 11, 2010, were in the aggregate amount of approximately $2.4 million (the "**TD Bank Claim**");

WHEREAS, on August 11, 2010, the Trustee and the City entered into and filed a Stipulation withdrawing the Appeals without prejudice and without costs, subject to being reinstated upon filing written notice by May 16, 2011; and

WHEREAS, the Trustee and the City have reached agreement on the terms of a proposed Use Agreement regarding the use of the Restaurant Mark, the Product Marks, the Concurrent User's Marks, and the Oil and Dressing Mark (collectively, the "**Marks**"), as defined and as provided in the Use Agreement, a copy of which is annexed hereto as Exhibit "A" (the "**Use Agreement**"); and

WHEREAS, the Trustee, the City and TD Bank, N.A. have conferred and have engaged in arms-length negotiations and desire to resolve the Litigation and related disputes.

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:

1. This Stipulation is subject to entry of an order by the Bankruptcy Court on the docket of the TOG's chapter 7 case, Case No. 09-15450 (consistent with the Bankruptcy Court Order dated September 22, 2009 directing that the docket in Case No. 09-15450 be consulted for all matters affecting the Debtors) approving this Stipulation (the "**Approval Order**"). In the event that an Approval Order is not obtained, this Stipulation shall be void *ab initio* and the Trustee shall have the right to reinstate the Appeals.

2. This Stipulation shall be effective on the date that the Approval Order becomes a Final Order (the "**Effective Date**"). For purposes of this Stipulation, the term Final Order shall mean an order, ruling, or judgment, the operation or effect of a judgment or other

782830v.28
775232

decree issued and entered by the Bankruptcy Court that has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted.

3.      Unless transferred sooner, promptly after the Effective Date, the Trustee, on behalf of the Estate, shall execute the assignment attached hereto as Exhibit B transferring ownership of the Restaurant Registration to the City, and shall also transfer ownership of the domain names and URLs, www.tavernonthegreen.com and www.tavernonthegreen.net, to the City.

4.      The Trustee acknowledges that as of the Effective Date, neither the Trustee nor the Estate has or will have any ownership or other rights of any kind in the Restaurant Mark or in any domain names and URLs using the name "Tavern on the Green", except as provided in the Use Agreement.  With respect to the Oil and Dressing Mark, any actions of the Trustee or the Estate shall be taken only to the extent permitted in the Use Agreement, subject to the terms, rights, limitations and obligations set forth in the Use Agreement.

5.      The Trustee intends to conduct an auction sale of the Use Agreement and ownership of the Oil and Dressing Mark (the "**Rights Sale**").  Such Rights Sale shall be only in whole and not in part, *i.e.*, there shall only be one concurrent user (the "**Concurrent User**") at any given time under the terms of the Use Agreement.  Such Rights Sale shall dispose of all

rights under the Use Agreement and in and to the Oil and Dressing Mark to a single purchaser, and the use/sublicensing of the Marks shall be subject to the terms of the Use Agreement.

6.      Upon the Effective Date and through and including such date that the Use Agreement is fully executed and delivered by the City and Concurrent User, if any, the City may exercise all rights in and to the Restaurant Mark, except as limited by the Use Agreement.

7.      Upon the Effective Date, the Estate shall be deemed to own the Oil and Dressing Mark and shall be fully vested with all rights in and to the Oil and Dressing Mark, subject to the terms of this Stipulation and the terms of the Use Agreement, whether the Use Agreement is executed or not.

8.      Upon the Effective Date, TD Bank's Lien shall be of no further force and effect with respect to the City's ownership and use of the Restaurant Mark.  TD Bank's Lien shall continue, in full force and effect, in and to the Estate's interests in the Use Agreement, the Oil and Dressing Mark, the Concurrent User's Marks, and the Product Marks and any proceeds of the Rights Sale.

9.      Promptly after the Effective Date, the Trustee shall file appropriate notices to discontinue the Appeals with prejudice and without costs, and the City and Trustee shall present to Judge Cedarbaum for her consideration, a stipulation dismissing the remaining claims in the District Court Cases with prejudice and without costs.

10.     The City acknowledges that the Use Agreement and the Oil and Dressing Mark are fully transferrable by the Estate pursuant to Bankruptcy Code sections 105, 363 and 365 and the Trustee has sole authority to sell the Use Agreement and the Oil and Dressing Mark, subject to the provisions of Paragraph 12 below.

11.     Neither the City nor the Trustee has the right to modify or to change any of the terms of the Use Agreement and neither the City nor the Trustee has the power to bind each other to any agreement pertaining to the use or ownership of the Marks except as provided in the Use Agreement.

12.     Notwithstanding anything herein:

(a)     The Trustee agrees that, absent the City's prior written consent, the Use Agreement shall not be sold to a third party unless the consideration for such Use Agreement equals or exceeds $500,000.00 (the "**Minimum Bid Price**").  If the Minimum Bid Price is not obtained prior to the Sale Deadline (as defined below) and the City does not provide the Trustee with prior written consent to sell Use Agreement for less than the Minimum Bid Price, the Use Agreement shall cease to have any force or effect; provided, however, the Estate shall retain all rights to the Oil and Dressing Mark subject to the terms and provisions of the Use Agreement whether executed or not and TD Bank's Lien in the Estate's interest in the Oil and Dressing Mark.

(b)     The Trustee agrees that the last date for the Trustee to seek Bankruptcy Court approval of a sale of the Use Agreement is the date that is nine (9) months after the Effective Date or such later date as the City may agree to in writing (the "**Sale Deadline**").  If the Trustee does not seek Bankruptcy Court approval of a sale of the Use Agreement on or before the Sale Deadline, which approval is subsequently granted by the Bankruptcy Court, the Use Agreement shall cease to have any force or effect; provided, however, the Estate shall retain all rights to the Oil and Dressing Mark subject to the terms and provisions of the Use Agreement whether executed or not and TD Bank's Lien in the Estate's interest in the Oil and Dressing Mark.

13.     Within twenty (20) days of receipt of a Use Agreement executed by the Concurrent User, the City shall execute and deliver a fully executed Use Agreement to the Concurrent User with a copy to the Trustee.

14.     All Net Proceeds (defined below) from the Rights Sale shall be deposited into the separate segregated account set up by the Trustee for such purpose and distributed as follows:

(a) The first Net Proceeds shall be distributed to TD Bank, N.A. until the TD Bank Claim (to the extent it is an allowed secured claim against the Estate, following application on notice to creditors, including the City, by TD Bank, N.A. for allowance of such Claim) is paid in full. All Net Proceeds from the Rights Sale shall be subject to TD Bank's Lien until such time as the TD Bank Claim is paid in full.

(b) The remaining Net Proceeds shall be divided between the City and the Estate. The Trustee shall retain seventy five percent (75%) of Net Proceeds for the Estate (for distribution pursuant to the priorities established in Bankruptcy Code section 706). The remaining 25% shall be distributed by the Trustee to the City.

15. For purposes of this Stipulation, Net Proceeds shall mean the total gross consideration paid to the Estate from any Rights Sale, less the reasonable and customary costs of sale, including commissions and expenses of Streambank, LLC pursuant to the Retention Agreement approved by the Bankruptcy Court in its order dated May 20, 2010, applicable taxes, if any, and break-up fees, expense reimbursements or other bidder protections as approved by the Bankruptcy Court and subject to TD Bank's approval, which approval shall not be unreasonably withheld, and the Trustee's commissions and reasonable attorneys' fees incurred in connection with the Rights Sale.

16. The City agrees that the Trustee may use images of Central Park, New York, and the Central Park Location, and may make reference to the historic operations of the restaurant Tavern on the Green; provided such images and references are used solely by the Trustee and parties retained by the Trustee to market the Use Agreement and such uses are consistent with the terms of the Use Agreement.

17. The parties shall assist each other by taking any steps reasonably necessary to effectuate the intent of this Stipulation in all respects; provided that the Estate shall not be required to take any action resulting in material costs to the Estate.

9

18.     The undersigned persons each represent that they are authorized to execute this Stipulation on behalf of the respective clients.

19.     This Stipulation may be executed in counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same.

20.     This Stipulation shall be binding upon and inure to the benefit of the parties' respective assigns and successors, including trustees and receivers.  This Stipulation may be signed and transmitted by facsimile or emailed pdf, which shall be deemed to have the full force and effect of original ink signatures.

21.     Nothing herein is intended to nor shall it be construed to limit, modify or otherwise amend any of TD Bank's and the Estate's relative rights, remedies, powers, or obligations vis á vis each other, including any rights or remedies TD Bank may have with respect to the Estate's interests in the Marks under applicable law (including the Bankruptcy Code), any Bankruptcy Court order or the loan documents between TD Bank and the Debtors.

22.     Except for the obligations hereunder and under the Use Agreement, the City, on the one hand and the Trustee on behalf of herself and the Estate on the other hand, mutually release and discharge each other, and their respective officers, directors, representatives and agents from liability for any and all claims that each may otherwise have or had against the other arising out of or in connection with the Marks.

23.     Except for the obligations hereunder, the City, on the one hand and TD Bank on the other hand, mutually release and discharge each other, and their respective officers,

directors, representatives and agents from liability for any and all claims that each may otherwise have or had against the other arising out of or in connection with the Marks.

Dated  Garden City, New York
      April 15, 2011

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:____/s/ Alan E. Marder_____
      Alan E. Marder, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY  11530-9194
(516) 741-6565

*Attorneys for Jil Mazer-Marino, Esq., the*
*Chapter 7 Trustee for Tavern on the Green*
*Limited Partnership and Leroy Adventures, Inc.*

Dated  New York, New York
      April 15, 2011

TD BANK, N.A.

By:____/s/George Guarino_____
    Name:George Guarino
    Title: Vice President, Asset Recovery Group
1701 Rt. 70 East
Cherry Hill, NJ 08034
(856) 874-2484

Dated  New York, New York
      April 15, 2011

MICHAEL A. CARDOZO
CORPORATION COUNSEL FOR THE CITY
OF NEW YORK

By:____/s/ Gerald E. Singleton_____
      Gerald Singleton, Esq.
100 Church Street
Room 20-093
New York, NY  10007
(212) 788-0760

*Attorneys for the City of New York and New York*
*City Department of Parks and Recreation*

SO ORDERED this 28th
day of April, 2011

*/s/ Allan L. Gropper*_____
UNITED STATES BANKRUPTCY JUDGE

782830v.28