**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
In re:

**TAVERN ON THE GREEN, L.P. and LEROY ADVENTURES, INC.,**

                             **Debtors.**
------------------------------------------------------------------X

Chapter 11

09-15450 (ALG)
09-15448 (ALG)

(Jointly Administered)

**ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 2002 AND 6004, (A) APPROVING BIDDING AND AUCTION PROCEDURES, (B) APPROVING STALKING HORSE BREAK UP FEE, AND (C) SCHEDULING THE AUCTION AND SALE HEARING AND APPROVING NOTICE THEREOF WITH RESPECT TO TRUSTEE'S SALE OF ESTATES' RIGHT, TITLE, AND INTEREST IN A USE AGREEMENT REGARDING THE NAME "TAVERN ON THE GREEN" AND CERTAIN RELATED INTELLECTUAL PROPERTY TO THE HIGHEST AND BEST BIDDER, FREE AND CLEAR OF LIENS, CLAIMS ENCUMBRANCES AND INTERESTS**

Upon the *Motion of the Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 and 6004, for Entry of (I) an Order (A) Approving Competitive Bidding And Auction Procedures, (B) Approving Stalking Horse Break-Up Fee, (C) Scheduling the Auction and Sale Hearing and Approving Notice Thereof, and (II) an Order Approving Trustee's Sale of Estates' Right, Title and Interest in a Use Agreement Regarding the Name "Tavern on the Green" and Certain Related Intellectual Property to the Highest and Best Bidder, Free and Clear of Liens, Claims, Encumbrances and Interests*, dated August 17, 2011 (the "**Motion**"), of Jil Mazer-Marino, the trustee (the "**Trustee**") of the chapter 7 bankruptcy estates ("**Estates**") of Tavern on the Green, L.P. and LeRoy Adventures, Inc., the above-captioned debtors (the "**Debtors**"); and the Motion having sought entry, pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 and 6004, of (I) an order, among other things, (A) authorizing and approving bidding and auction procedures, in the form annexed hereto as Exhibit "1" (the "**Bidding &**

**Auction Procedures**") in connection with the Trustee's proposed sale of the Use Agreement[1] regarding the name "Tavern on the Green" and certain related intellectual property (collectively, the "**Assets**"), (B) authorizing payment, under certain circumstances, of a break-up fee (the "**Break-Up Fee**") to Tavern International LLC (the "**Stalking Horse Bidder**"); and (C) scheduling the auction and the sale hearing and approving the form and manner of notice thereof; and (II) an order (the "**Sale Order**") (A) approving the Trustee's sale of the Estates' right, title and interest in the Acquired Assets to the bidder submitting the highest and best bid free and clear of liens, claims, encumbrances and interests and (B) granting related relief; and the Court having entered an Order on August 17, 2011, scheduling an expedited hearing to consider that part of the Motion seeking entry of a Bid Procedure Order; and upon the Court's consideration of the Motion, the record of the hearing held on August 31, 2011 with respect to the Motion (the "**Bid Procedures Hearing**"), including any objections filed and raised at the Bid Procedures Hearing; and good and sufficient notice of the Motion and the Bid Procedures Hearing having been given and no other or further notice of the Motion or the Bid Procedures Hearing being required; and upon all of the proceedings had before the Court; and after due deliberation, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.  The Court has jurisdiction over this Motion, this matter and over the property of the Estates pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (0). The statutory predicates for the relief sought herein are

---

[1] Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Sale Motion.

11 U.S.C. §§ 105, 363, and 503 and Fed. R. Bankr. P. 2002 and 6004. Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The relief granted herein is in the best interests of the Estates, all creditors and other parties in interest.

C. The notice of the Motion and the Bid Procedures Hearing given by the Trustee constitutes due and sufficient notice thereof.

D. The Trustee has articulated good and sufficient reasons for the Court to (i) approve the Bidding and Auction Procedures, including the authorization to incur and pay expenses necessary to the Auction and sale process, (ii) approve the Break-Up Fee as provided in the Stalking Horse APA, (iii) approve the form and manner of notice of the Auction and the Sale Hearing, and (iv) schedule the date of the Auction and the Sale Hearing.

E. The Stalking Horse Bidder is unwilling to commit to purchase the Acquired Assets under the terms of the Stalking Horse APA unless the Stalking Horse Bidder is assured the Break-Up Fee. Accordingly, the Break-Up Fee is a material inducement for, and condition of, the Stalking Horse Bidder's entry into the Stalking Horse APA.

F. The Stalking Horse Bidder's agreement to enter into the Stalking Horse APA is of substantial benefit to the Estates and the Break-Up Fee, to the extent payable under the Stalking Horse APA, (i) shall be deemed an actual and necessary cost and expense of preserving the Estates and "carved-out" of TD Bank's lien on the sale proceeds, (ii) is reasonable and appropriate in light of the size and nature of the Sale Transaction and the efforts that have been

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

and will be expended by the Stalking Horse Bidder, (iii) has been negotiated by the parties and their respective advisors at arms' length and in good faith, and (iv) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Sale Transaction.

G. The Bidding & Auction Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1. The Motion is granted, as provided herein.

2. All objections filed in response to the relief granted herein, to the extent not resolved as set forth herein or at the Bid Procedures Hearing, are hereby overruled.

3. The Sale Transaction contemplated by the APA is designated as the "**Stalking Horse Bid**."

4. The Bidding and Auction Procedures, substantially in the form annexed hereto as **Exhibit "1,"** are incorporated herein by reference and are hereby approved. The failure specifically to include or reference a particular provision of the Bidding and Auction Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5. To constitute a "**Qualified Bid**", a bid (other than the Stalking Horse Bid which is deemed to constitute a Qualified Bid) must be received by the Bid Deadline (as defined in the Bidding and Auction Procedures) and otherwise comply with all of the applicable provisions of the Bidding and Auction Procedures.

6. The Auction shall be held on September 21, 2011 at 10:00 a.m. (New York time) at Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, New York or such other location reasonably determined by the Trustee in advance of the Auction. The

Trustee shall file a notice announcing the results of the Auction and the identity of the Successful Bidder on the Court's docket as soon as practicable after conclusion of the Auction.

7. The Court shall hold a hearing on September 26, 2011, at 2:30 p.m. (New York time) (the "**Sale Hearing**"), at which time the Court will consider the approval of the Sale Transaction as set forth in the Motion, approve the Successful Bidder, and confirm the results of the Auction, if any.

8. Objections to the Sale Transaction, if any, must be in writing and must be filed and served so as to be actually received by the Bankruptcy Court and the following parties on or before September 19, 2011 at 5:00 p.m. (New York time) (the "**Objection Deadline**"):

   a. the attorneys for the Trustee, Meyer, Suozzi, English & Klein, P.C. 990 Stewart Avenue, Suite 300, Garden City, New York, 11530, Attn: Jil Mazer-Marino, Esq.;

   b. the attorneys for TD Bank, Reed Smith, 599 Lexington Avenue, 22nd Floor, New York, NY 10022, Attn: Gregory S. Shatan, Scott M. Esterbrook;

   c. the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andrew Velez-Rivera, Esq.;

   d. Streambank, LLC, 400 Madison Avenue, New York, NY 10017, Attn: Jack Hazan; and

   e. the attorneys for the Stalking Horse Bidder, Akabas & Sproule, 488 Madison Avenue, 11th Floor, New York, NY 10022, Attn: Seth A. Akabas, Esq.

9. The failure to file and serve an objection to the Sale Transaction by the Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or thereafter.

10. The Sale Hearing may be adjourned from time to time without further notice other than by announcement of the adjournment in open Court or the entry of a notice of such adjournment on the Court's docket.

11. The Trustee's obligation to pay the Break-Up Fee as provided herein shall survive termination of the Stalking Horse APA, shall constitute a super-priority administrative claim against the Estates pursuant to sections 503(b) and 364(c)(1) of the Bankruptcy Code and shall be senior to, and have priority over, all other claims against the Estates.

12. Subject to the foregoing, the Break-Up Fee shall be paid from the gross proceeds of any approved sale and the sale proceeds required to pay the Break-Up Fee in full shall not become Net Proceeds subject to TD Bank's lien. On consent of TD Bank, its lien on the sale proceeds shall be subordinated to the prior payment in full of the Break-Up Fee. Pursuant to the Stipulation, on consent of TD Bank, its lien on the sale proceeds is also subordinate to the prior payment in full of Streambank's commissions and expenses, applicable taxes, if any, reasonable and customary costs of sale, the statutory commissions payable to the Trustee, and the reasonable attorneys' fees and expenses incurred by the Trustee in connection with sale process.

13. The Trustee is authorized to take any and all actions as contemplated by the Bidding and Auction Procedures and the Stalking Horse APA prior to the Auction and the Sale Hearing, including, without limitation, actions to notify creditors or other interested parties regarding the Sale Transaction and to obtain any and all necessary consents or approvals regarding the Sale Transaction.

14. Notwithstanding anything in the Stalking Horse APA to the contrary, notice of (a) the Motion, (b) the Bidding and Auction Procedures, (c) the Auction, (d) the Objection Deadline, and (e) the Sale Hearing shall be good and sufficient, and no other or further notice shall be required, if notice is given as follows: within three (3) business days after entry of this Order, the Trustee or her agents shall: (x) serve a notice, in substantially the form attached hereto as **Exhibit "2"** (the "**Sale Notice**")*,* upon (i) the Office of the United States Trustee; (ii) the

attorneys for TD Bank; (iii) the attorneys for the Stalking Horse Bidder; (iv) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (v) all known creditors of the Debtors and all entities known to have asserted any claims against the Acquired Assets or the Estates' interest in the Acquired Assets and other entities known to have asserted a lien, interest or encumbrance in or upon any of the Acquired Assets; and (vi) all known bona fide entities that have previously expressed an interest in purchasing the Acquired Assets in the last twelve months preceding the date of the Motion.

15. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
August 31, 2011

                                              */s/ Allan L. Gropper*
                                              HONORABLE ALLAN L. GROPPER
                                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
In re:                                                   **Chapter 11**

**TAVERN ON THE GREEN, L.P. and LEROY**                  **09-15450 (ALG)**
**ADVENTURES, INC.,**                                    **09-15448 (ALG)**

                                                         **(Jointly Administered)**
                        **Debtors.**
-------------------------------------------------------------------X

**BIDDING AND AUCTION PROCEDURES FOR TRUSTEE'S
SALE OF USE AGREEMENT AND RELATED RIGHTS**

**A.    Introduction**

Jil Mazer-Marino, in her capacity as trustee ("**Trustee**") of the chapter 7 bankruptcy estates ("**Estates**") of Tavern on the Green, L.P. and LeRoy Adventures, Inc., the above-captioned debtors (collectively the "**Debtors**"), sets forth the following bidding and auction procedures (the "**Bidding and Auction Procedures**") to be employed in connection with an auction sale (the "**Auction**") of the Estates' right, title and interest in the Use Agreement[3] and certain related intellectual property. At a hearing following the Auction (the "**Sale Hearing**"), the Trustee will seek the entry of an order (the "**Sale Order**") from the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") authorizing and approving the sale to the Qualified Bidder(s) (as defined below) that the Trustee determines to have made the highest or otherwise best bid (each, a "**Successful Bidder**").

**B.    Approvals**

The proposed sale shall in all respects be subject to approval by the Bankruptcy Court and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable rules and law, including, without limitation, the Local Rules and Orders of the Bankruptcy Court.

---

[3] Capitalized terms used herein but not defined herein shall have the meaning ascribed thereto in the *Motion of the Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 And 6004, for Entry of (I) an Order (A) Approving Competitive Bidding and Auction Procedures, (B) Approving Stalking Horse Break-Up Fee, (C) Scheduling an Auction and Sale Hearing and Approving Notice Thereof, and (II) An Order Approving Trustee's Sale of Estates' Right, title and interest in a Use Agreement Regarding the Name "Tavern on the Green" and Certain Related Intellectual Property to Highest and Best Bidder, Free and Clear of Liens, Claims, Encumbrances and Interests* (**"Motion"**).

C.  **Assets to Be Sold**

The property sold at the Auction shall consist of the Acquired Assets as such term is defined in the Motion consisting of all of the Estates' right, title, and interest in: the Use Agreement; the trademark "Tavern on the Green" for cooking oils, salad dressings, and dipping oils (Reg. No. 3,494,658); the trademark registrations for "Tavern on the Green" in Japan and in the United Arab Emirates; a pending U.S. trademark application (Serial Number 85/063,715) for "Tavern on the Green" in certain product categories.

D.  **Bid Deadline**

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined below) on or before September 19, 2011 at 5:00 p.m. (New York Time) (the "**Bid Deadline**") in writing, to the Trustee, Jil Mazer-Marino, Meyer, Suozzi, English & Klein, P.C., 990 Stewart Avenue, Suite 300, P.O. Box 9194, Garden City, NY 11530, (516) 741-6706 (fax), jmazermarino@msek.com, and to the Trustee's advisor Streambank, LLC, 400 Madison Avenue, New York, NY 10017, Attn: Jack Hazan, (212) 610-5603 (fax), jhazan@streambankllc.com.

E.  **Qualified Bids**

In order to participate in the bidding process and be deemed a "**Qualified Bidder**," each potential bidder (other than the Stalking Horse Bidder, as defined below) must submit a "**Qualified Bid**" by the Bid Deadline. To constitute a Qualified Bid, a bid must:

(a) be in writing;

(b) state that such bidder offers to purchase the entirety of the Acquired Assets;

(c) state that such bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Acquired Assets for a purchase price equal to or greater than $1,400,000.00 on terms and conditions no less favorable in the aggregate to the Estates than the terms and conditions contained in that certain Asset Purchase Agreement, dated as of August 16, 2011 (the "**Stalking Horse APA**"), by and between the Trustee and Tavern International LLC (the "**Stalking Horse Bidder**");

(d) include a clean and duly executed Asset Purchase Agreement (the "**Modified APA**") and a marked Modified APA reflecting the variations from the Stalking Horse APA;

(e) provide that such bidder's offer is terminable only in accordance with its terms as agreed to by the Trustee and is otherwise irrevocable until the closing of the sale of the Acquired Assets if such bidder is the Successful Bidder (as defined below) or the designated Back-Up Bidder (as defined below) at the conclusion of the Auction;

10

(f) state that such bidder is financially capable of consummating the transactions contemplated by the Modified APA and detail the source(s) of funds that will be used to consummate the transaction;

(g) include such financial and other information that will allow the Trustee to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transaction contemplated by the Modified APA;

(h) not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

(i) fully disclose the identity of each person and/or entity that will be bidding for the Acquired Assets or otherwise participating in connection with such bid, and the complete terms of any such participation and name, address, phone number, e-mail address and fax number for each person or entity;

(j) not contain any due diligence or financing contingencies of any kind;

(k) include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA; and

(l) include a cash deposit in an amount equal to ten (10%) percent of the value of the consideration offered to purchase the Acquired Assets (the "**Good Faith Deposit**").

The Trustee, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than 5:00 p.m. (New York Time) on September 19, 2011. The Stalking Horse Bidder is deemed a Qualified Bidder and the Stalking Horse APA constitutes a Qualified Bid for all purposes.

F. **Stalking Horse Bidder Expense Reimbursement**

Recognizing the Stalking Horse Bidder's expenditure of time, energy, and resources, the Trustee has agreed that if the Stalking Horse Bidder is not the Successful Bidder, the Estates will, in certain circumstances, pay to the Stalking Horse Bidder a break-up fee and expense reimbursement not to exceed $65,000.00.

G. **No Qualified Bids**

If no timely, conforming Qualified Bids, other than the Stalking Horse APA, are submitted by the Bid Deadline with respect to the Acquired Assets, the Trustee may determine not to hold the Auction and, instead, may request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse APA with the Stalking Horse Bidder.

**H.      Auction**

In the event that the Trustee timely receives one or more Qualified Bids other than the Stalking Horse APA for the Acquired Assets, the Trustee shall conduct the Auction. The Auction will be conducted at Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, NY 10018 on September 21, 2011 at 10:00 a.m. (New York Time); provided, however, that the Trustee shall have the right to adjourn or cancel the Auction or change the location of the Auction at any time by providing reasonable notice of such cancellation or change of location to all Qualified Bidders.

The Auction shall be governed by the following procedures, subject to modification by the Trustee at the Auction:

(a)     The Stalking Horse Bidder and the Qualified Bidders shall appear in person at the Auction, through a duly authorized representative.

(b)     Only representatives of the Trustee, her counsel and other advisors, TD Bank, the Stalking Horse Bidder, and holders of Qualified Bids and their counsel, shall be entitled to be present at the Auction (the "**Permitted Parties**").

(c)     Only the Stalking Horse Bidder and Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

(d)     Each Qualified Bidder (including the Stalking Horse Bidder) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(e)     Bidding shall commence at the amount of the highest Qualified Bid submitted by the Qualified Bidder prior to the Auction.

(f)     Qualified Bidders may then submit successive bids higher than the previous bid in increments to be determined by the Trustee at the Auction. The Trustee reserves the right, in her reasonable discretion and business judgment, to announce reductions or increases in minimum incremental bids at any time during the Auction.

(g)     All Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Stalking Horse APA or their respective Modified APA, as applicable, at the Auction to improve such bids.

(h)     The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(i)     The Trustee reserves the right to (x) determine, in her reasonable discretion and business judgment, which bid is the highest or otherwise best, and (y) reject at any time, without liability, any bid, other than the Stalking Horse Bid, that the

    Trustee, in her reasonable discretion and business judgment, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Estates.

 (j) The Auction shall continue until the Trustee determines, subject to Bankruptcy Court approval, that the Estates have received the highest or otherwise best offer or offers for the Acquired Assets from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at the Auction (the "**Successful Bid**"). In making this decision, the Trustee may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Trustee with respect to the termination thereof, the number, type and nature of any changes reflected in the Modified APA requested by each Qualified Bidder, and the net benefit to the Estates. The Qualified Bidder submitting such Successful Bid for the Acquired Assets shall become the "**Successful Bidder**," and shall have such rights and responsibilities of a purchaser, as set forth in the Modified APA.

 After the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid were made, make and pay for all necessary filings with all applicable governmental or other authorities, and deliver to the Trustee, an amount equal to ten percent (10%), in immediately available funds, of its successful bid, minus the Good Faith Deposit.

**I.** **Reservation of Rights**

 The Trustee reserves the right, in her reasonable discretion and subject to the exercise of her business judgment, to make alterations to these Bid Procedures and/or to terminate discussions with any and all prospective bidders (including the Stalking Horse Bidder) at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bidding and Auction Procedures set forth herein.

**J.** **Back-Up Bidder and Return of Good Faith Deposits**

 If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid for the Acquired Assets at the Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder (the "**Back-Up Bidder**") for such Acquired Assets and keep such Back-Up Bid open and irrevocable for (i) two (2) business days after the closing of the Sale Transaction with the Successful Bidder or (ii) until closing of the sale with the Backup Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Trustee will be authorized, but not required, to consummate the sale with the Back-Up Bidder without

13

further order of the Bankruptcy Court. The Stalking Horse Bidder can be designated as the Back-Up Bidder whether or not the Stalking Horse Bidder makes a further bid at the Auction.

Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Trustee as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Trustee until the later of (i) two (2) business days after the closing of the sale transaction with the Successful Bidder; and (ii) forty-five (45) days after the final Sale Hearing.

**K.    Sale Hearing**

The Successful Bid (or the Stalking Horse APA, if no Qualified Bid other than that of the Stalking Horse Bidder is received or accepted) will be subject to approval by the Bankruptcy Court. The Sale Hearing will take place on September 26, 2011 at 2:30 p.m. (New York Time) before the Honorable Allan Gropper, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket.

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
*Attorneys for Jil Mazer-Marino, the Chapter 7 Trustee*
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530

# EXHIBIT 2

Howard B. Kleinberg, Esq.
Jessica G. Berman, Esq.
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone:  (516) 741-6565
Facsimile:   (516) 741-6706

*Attorneys for Jil Mazer-Marino, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| In re: | **Chapter 11** |
| **TAVERN ON THE GREEN, L.P. and LEROY ADVENTURES, INC.,** | 09-15450 (ALG)<br>09-15448 (ALG) |
| **Debtors.** | **(Jointly Administered)** |

-------------------------------------------------------------------X

### NOTICE OF MOTION OF THE CHAPTER 7 TRUSTEE, PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 2002 AND 6004, FOR ENTRY OF AN ORDER (A) APPROVING COMPETITIVE BIDDING AND AUCTION PROCEDURES, (B) APPROVING STALKING HORSE BREAK-UP FEE, (C) SCHEDULING THE AUCTION AND SALE HEARING AND APPROVING NOTICE THEREOF, RELATING TO TRUSTEE'S SALE OF ESTATES' RIGHT, TITLE AND INTEREST IN A USE AGREEMENT REGARDING THE NAME "TAVERN ON THE GREEN" AND CERTAIN RELATED INTELLECTUAL PROPERTY TO HIGHEST AND BEST BIDDER FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

**PLEASE TAKE NOTICE** that, on August 17, 2011, Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") of the chapter 7 estates ("**Estates**") of Tavern on the Green, L.P. and LeRoy Adventures, Inc., the above-captioned debtors (the "**Debtors**"), by her attorneys Meyer, Suozzi, English & Klein, P.C. ("**MSEK**"), filed the *Motion of Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 and 6004, for Entry of an Order (A) Approving Competitive Bidding and Auction Procedures, (B) Approving Stalking Horse Break-Up Fee, (C) Scheduling the Auction and Sale Hearing and Approving Notice Thereof, Relating To Trustee's Sale of Estates' Right, Title and Interest in a Use Agreement Regarding the Name "Tavern on the Green" and Certain Related Intellectual Property to Highest and Best Bidder Free and Clear of Liens, Claims, Encumbrances and Interests* (**the "Motion"**) with the United States Bankruptcy Court for the Southern District of New York (**the "Bankruptcy Court"**).

**PLEASE TAKE FURTHER NOTICE**, that the Motion seeks, among other things, approval of the Trustee's sale of certain assets pursuant to an asset purchase agreement (the "**Stalking Horse APA**") with Tavern International LLC (the "**Stalking Horse Bidder**"), with such sale to be free and clear of all liens, claims, encumbrances, and interests and subject to higher and better offers under Bankruptcy Code sections 363(b), (f) and (m). The assets to be sold consist of all of the Estates' right, title and interest in a certain Use Agreement regarding the name "Tavern on the Green" and related intellectual property (collectively, the "**Assets**") and are more fully described in the Motion. The purchase price for the Assets under the Stalking Horse APA is $1,300,000.00.

**PLEASE TAKE FURTHER NOTICE** that the Trustee is soliciting higher or otherwise better offers for the Assets. All bids for the Assets must conform to the Bidding and Auction Procedures annexed hereto. **ALL BIDS MUST BE DELIVERED SO AS TO BE RECEIVED BY THE TRUSTEE AND MSEK ON OR BEFORE SEPTEMBER 19, 2011 AT 5:00 P.M**.

**PLEASE TAKE FURTHER NOTICE** that if the Trustee timely receives competing bids that are Qualified Bids (as that term is defined in the Bidding and Auction Procedures), the Trustee may conduct an auction of the Assets (the "**Auction**").

**PLEASE TAKE FURTHER NOTICE** that the **AUCTION WILL BE HELD ON SEPTEMBER 21, 2011 AT 10:00 A.M.** at the offices of Meyer, Suozzi, English, and Klein, P.C., 1350 Broadway Suite 501, New York, New York 10018. The Auction may be adjourned at the discretion of the Trustee.

**PLEASE TAKE FURTHER NOTICE** that additional information respecting the Assets and the Auction process may be obtained by contacting the Trustee's agent Streambank, LLC, Phone: (212) 610-5663, Fax: (212) 610-5603, Email: jhazan@streambankllc.com, Attn. Jack Hazan.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Sale Hearing**") will be held seeking approval of the sale of the assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA or to the Qualified Bidder that the Trustee determines to have submitted the highest or otherwise best bid for the Assets.

**PLEASE TAKE FURTHER NOTICE** that the **SALE HEARING WILL BE HELD ON SEPTEMBER 26, 2011 AT 2:30 P.M.** or as soon thereafter as counsel can be heard, before the Honorable Allan L. Gropper, United States Bankruptcy Judge for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004-1408, Courtroom 617. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

**PLEASE TAKE FURTHER NOTICE THAT** objections to the relief requested in the Motion, including the Trustee's request to approve the sale of Assets free and clear of all

17

liens, claims, encumbrances and interests, must be in writing, filed, and served so as to be actually received by **SEPTEMBER 19, 2011 AT 5:00 P.M. (NEW YORK TIME)** by the Bankruptcy Court and: (i) the attorneys for the Trustee, Howard B. Kleinberg, Esq. and Jessica G. Berman, Esq., Meyer, Suozzi, English & Klein, P.C., 990 Stewart Ave., Suite 300, P.O. Box 9194, Garden City, New York 11530-9194; (ii) counsel for TD Bank, N.A., Gregory Shatan, Esq. and Edward Estrada, Esq., Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022 and Scott M. Esterbrook, Esq., Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania 19103; and (iii) the United States Trustee, Andy Velez-Rivera, Esq., Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bidding and Auction Procedures, and the Stalking Horse APA may be obtained by (i) contacting the attorneys for the Trustee, Meyer, Suozzi, English & Klein, P.C., 990 Stewart Avenue, Suite 300, Garden City, New York 11530, Attn. Howard B. Kleinberg, Esq. or Jessica G. Berman, Esq.; (ii) accessing the Bankruptcy Court's website at http://www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); and (iii) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

**Dated:** Garden City, New York

       August __, 2011

       **MEYER, SUOZZI, ENGLISH & KLEIN P.C.**
       *Attorneys for the Chapter 7 Trustee*

       **By:** _____
         **Howard B. Kleinberg, Esq.**
         **Jessica G. Berman, Esq.**
       **990 Stewart Avenue, Suite 300**
       **P.O. Box 9194**
       **Garden City, New York 11530-9194**
       **Phone: (516) 741-6565**
       **Fax : (516) 741-6706**

18

844376