**Howard B. Kleinberg, Esq.**
**Jessica G. Berman, Esq.**
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530-9194**
**Telephone:  (516) 741-6565**
**Facsimile:   (516) 741-6706**

*Attorneys for Jil Mazer-Marino, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

| | |
|---|---|
| In re: | **Chapter 11** |
| **TAVERN ON THE GREEN, L.P. and LEROY ADVENTURES, INC.,** | **09-15450 (ALG)** <br> **09-15448 (ALG)** |
| **Debtors.** | **(Jointly Administered)** |

------------------------------------------------------------------X

**ORDER, PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FED. R. BANKR. P. 2002 AND 6004, AUTHORIZING AND APPROVING TRUSTEE'S SALE OF ESTATES' RIGHT, TITLE AND INTEREST IN A USE AGREEMENT REGARDING THE NAME "TAVERN ON THE GREEN" AND CERTAIN RELATED INTELLECTUAL PROPERTY TO TAVERN INTERNATIONAL, LLC, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Upon the motion (the "**Motion**"), dated August 17, 2011,[1] of Jil Mazer-Marino, the trustee (the "**Trustee**") of the chapter 7 bankruptcy estates ("**Estates**") of Tavern on the Green, L.P. and LeRoy Adventures, Inc., the above-captioned debtors (the "**Debtors**"), pursuant to sections 105 and 363 of title 11, United States Code (the "**Bankruptcy Code**"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, for entry of (I) an order, among other things, (A) approving competitive bidding and auction procedures, (B) approving stalking horse

---

[1] Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Motion.

break-up fee (the "**Break-Up Fee**"), (C) scheduling the auction and sale hearing and approving notice thereof, in connection with the Trustee's sale of the Estates' right, title and interest under a certain Use Agreement (the "**Use Agreement**") regarding the name "Tavern on the Green" along with related intellectual property, free and clear of liens, claims, encumbrances and interests; and the Court having entered an order on August 31, 2011 (the "**Bidding and Auction Procedures Order**"), *inter alia,* (i) approving competitive bidding and auction procedures (the "**Bidding and Auction Procedures**"), (ii) approving the stalking horse break-up fee, and (iii) scheduling the auction and sale hearing (the "**Sale Hearing**") and approving notice thereof; and no Qualified Bids having been received by the Trustee prior to the deadline established in the Bidding and Auction Procedures Order except the Qualified Bid submitted by Tavern International LLC (the "**Purchaser**"), the Stalking Horse Bidder, contained in that certain Asset Purchase and Sale Agreement, dated August 17, 2011 (as same may be amended or modified from time to time, the "**Purchase Agreement**"); and the Trustee having exercised her option set forth in Section G of the Bidding and Auction Procedures to forego conducting an Auction; and upon the Court's consideration of the Motion, the Purchase Agreement, a copy of which is attached hereto as *Exhibit "A"* and the record of the Sale Hearing held on September 26, 2011 with respect to the Motion (at which time all interested parties were afforded an opportunity to be heard with respect to the Motion), including the proffer on arms' length sale admitted at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Estates, their creditors and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

A. **Jurisdiction and Venue**. This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a) and 363, Bankruptcy Rules 2002 and 6004 and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**").

C. **Notice**. As evidenced by the affidavits of service and publication filed with this Court and based upon the representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Bidding and Auction Procedures, and the Sale Hearing has been provided in accordance with the Bidding and Auction Procedures Order; (ii) no other or further notice need be provided; and (iii) such notice was and is good, sufficient and appropriate under the circumstances of these cases.

D. **Opportunity to Object.** A reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein has been given to all interested persons and entities.

E. **Marketing**. The Trustee engaged in reasonable and appropriate marketing of the Assets (as defined in paragraph number 4 below). Potential bidders had a full, fair and reasonable opportunity to submit bids and to participate in an Auction. The Trustee did not receive any Qualified Bids other than that of the Purchaser. Accordingly, the Trustee's selection of the Purchaser constitutes a valid and sound exercise of the Trustee's business judgment.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

F.  **Arm's-Length Sale**.  The Purchase Agreement and any related agreements thereto were or will be negotiated, proposed and entered into by the Trustee and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement or any related agreements to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person.  The terms and conditions of the Purchase Agreement, related agreements and the Sale Transaction, including, without limitation, the consideration provided in respect thereof, are fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

G.  **Good Faith Purchaser**.  The Purchaser is not an "insider" of any of the Debtors as that term is used in section 101(31) of the Bankruptcy Code.  The Purchaser has proceeded in good faith and without collusion in all respects in connection with the purchase and sale of the Assets (as defined in paragraph number 4 below) (the "**Sale Transaction**") and is therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction unless such authorization is duly stayed prior to the Closing.

H.  **Corporate Authority**.  The Trustee, on behalf of the Estates, had, has, and is hereby granted, (i) full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and (ii) all of the corporate power and authority necessary to consummate the Sale Transaction.  No other or further consents or approvals are required to consummate the Sale Transaction.

I. **Sale in Best Interests**. Good and sufficient reasons for approval of the Purchase Agreement and the Sale Transaction have been articulated and the relief requested in the Motion is in the best interests of the Debtors' Estates, their creditors and other parties in interest.

J. **Business Justification**. The Trustee has demonstrated good, sufficient and sound business purposes and justifications. Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Sale Transaction.

K. **Consideration**. The consideration provided by the Purchaser pursuant to the Purchase Agreement constitutes reasonably equivalent value or fair and adequate consideration. The Purchase Agreement represents a fair and reasonable offer to purchase the Assets under these circumstances and was not entered into for the purpose of, and does not have the effect of, hindering, delaying or defrauding creditors of any of the Debtors under any applicable laws. Approval of the Motion, the Purchase Agreement, and the Sale Transaction by this Court is in the best interests of the Debtors' Estates, their creditors and all other parties in interest.

L. **Free and Clear**. The transfer of the Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer and will vest the Purchaser with all right, title, and interest of the Estates to the Assets (as defined in paragraph number 4 below) free and clear of all liens (as defined in section 101(37) of the Bankruptcy Code), claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior or subsequent to the commencement of the Debtors' chapter 11 cases or

chapter 7 cases, whether imposed by agreement, understanding, law, equity or otherwise including, but not limited to, laws and doctrines of successor or transferee liability or similar theories (collectively, including without limitation, such liens, claims and other interests, the "**Interests**"), subject to the specific rights and obligations granted to the Estates in the Stipulation and Use Agreement and the Estates' assignment thereof to the Purchaser.

M. **Free and Clear Findings Needed by Purchaser**. The Purchaser asserts that it would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors' Estates and their creditors, if the sale of the Assets to the Purchaser was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests (other than as agreed to in the Purchase Agreement).

N. **Satisfaction of Section 363(f) Standards**. The Assets (as defined in paragraph number 4 below) constitute property of the Debtors' Estates and title thereto is currently vested in the Trustee on behalf of the Debtors' Estates within the meaning of section 541(a) of the Bankruptcy Code. The Trustee may sell the Assets free and clear of any Interests of any kind or nature whatsoever because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. The person or entity with any Interest in the Assets: (i) has consented to the Sale Transaction or is deemed to have consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. TD Bank N.A. ("**TD Bank**"), the only party with an Interest in the Assets, consents to the sale. TD Bank's Interests are adequately protected by having its Interests attach to the proceeds ultimately attributable to the Assets against or in which such Interests are asserted, with the same

validity, force and effect, and in the same order of priority, which such Interests had against the Assets or their proceeds as of the Closing, subject to any rights, claims and defenses that the Trustee or the Debtors' Estates may possess with respect thereto.

O. **Sale Process**. The Trustee adequately marketed the Assets (as defined in paragraph number 4 below) and conducted the Sale Transaction process in a non-collusive, fair and good faith manner, all in accordance with the Bidding and Auction Procedures Order.

P. **No Successor Liability**. The Purchaser is not a continuation of the Debtors or their Estates and there is no continuity between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors or their Estates, and the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors or their Estates.

Q. **Personally Identifiable Information**. The sale does not include the transfer of "Personally Identifiable Information" (as defined in section 101(41A) of the Bankruptcy Code).

R. **Immediate Consummation of Sale**. There is no legal or equitable reason to delay the Sale Transaction.

S. **Sale Hearing**. All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing are incorporated herein.

T. **Stipulation with the City**. On April 28, 2011, this Court "So Ordered" that certain *Stipulation Resolving Disputes Between Tavern on the Green Limited Partnership and LeRoy Adventures, Inc. and the City of New York and the New York City Department of Parks and Recreation* (the "**Stipulation**") by and among the Debtors' Estates, the City of New York and New York Department of Parks and Recreation (the "**City**") and TD Bank. Paragraph 13 of the Stipulation states that, "[w]ithin twenty (20) days of receipt of a Use Agreement executed by

the Concurrent User, the City shall execute and deliver a fully executed Use Agreement to the Concurrent User with a copy to the Trustee."

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

1. **Motion is Granted**. The Motion and the relief requested therein are GRANTED and APPROVED, as set forth herein.

2. **Objections**. No objections have been filed.

3. **Approval.** The Purchase Agreement and related agreements and all of the terms and conditions thereto are hereby approved. The Trustee is hereby authorized to (a) execute the Purchase Agreement along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, *provided* that such additional documents do not materially change its terms and are filed on the docket; (b) consummate the Sale Transaction in accordance with the terms and conditions of the Purchase Agreement and the other agreements contemplated thereby; and (c) take all other and further actions as may be reasonably necessary to implement the Sale Transaction.

4. **Valid Transfer**. As of the Closing, the Sale Transaction effects a legal, valid, enforceable and effective sale and transfer of the Assets to the Purchaser and shall vest the Purchaser with title to such Assets (as defined in this paragraph number 4) free and clear of all Interests of any kind whatsoever. All persons or entities presently, or on or after the Closing, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Purchaser or its designee at the Closing or at such time thereafter as the Purchaser requests. For the avoidance of doubt, as used in this Order, the term "Assets" means the Acquired Assets, as defined in the Purchase Agreement, together with the Estates' rights to enter into the Use

Agreement and to enforce paragraph 13 of the Stipulation, which paragraph requires the City to execute and deliver a fully executed Use Agreement to the Concurrent User within twenty (20) days after receipt of a Use Agreement executed by the Concurrent User (as that term is defined in the Stipulation).

5. **General Assignment**. On the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Estates' interests in the Assets to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

6. **Injunction**. All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other persons holding Interests of any kind or nature whatsoever against or in the Debtors' or the Estates' interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior or subsequent to the commencement of the Debtors' chapter 11 cases or chapter 7 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Estates, the Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Estates' interests in the Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser or its property (including the Assets). Following the Closing, no holder of an Interest against the Debtors shall interfere with the Purchaser's title to, or use and enjoyment of, the Assets based on, or related to, such Interests

and all such Interests, if any, shall be, and hereby are, transferred and attached to the proceeds from the Sale Transaction in the order of their priority, with the same validity, force and effect which they had against such Assets as of the Closing, subject to any rights, claims and defenses that the Trustee, the Debtors' Estates and the Debtors, as applicable, may possess with respect thereto.

7. **No Successor Liability**. The transfer of the Assets to the Purchaser under the Purchase Agreement shall not result in (a) the Purchaser or the Assets having any liability or responsibility for any Interest against the Debtors' Estates, (b) the Purchaser or the Assets having any liability whatsoever with respect to or being required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest, or (c) the Purchaser or the Assets, having any liability or responsibility to the Debtors' Estates except as is expressly set forth in the Purchase Agreement. Without limiting the effect or scope of the foregoing, as a result of the closing of the Sale Transaction, to the greatest extent available under applicable law, the Purchaser shall have no successor, derivative or vicarious liabilities of any kind or character, including, but not limited to, liabilities based on any theory of successor or transferee liability, antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior or subsequent to the commencement of the Debtors' chapter 11 cases or chapter 7 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the

operation of the Assets prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors.

8. **Binding Effect of Order**. This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments related to any of the Assets. The terms and provisions of the Purchase Agreement, related agreements and this Sale Order shall be binding in all respects upon the Trustee, the Debtors, the Debtors' Estates, all creditors of (whether known or unknown) and holders of equity interests in the Debtors, the Purchaser and their respective affiliates, successors and assigns, and any third parties.

9. **Release of Interests**. This Sale Order shall be effective as a determination that, on the Closing, except as otherwise provided in the Purchase Agreement, all Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated against the Assets and that the conveyances described herein have been effected. If any person or entity that has filed financing statements or other documents or agreements evidencing Interests against or in the Assets shall not have delivered to the Trustee prior to Closing, after due demand therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions and/or releases of all Interests that the person or entity has with respect to the Assets, then (a) the Trustee and the Purchaser are each hereby authorized to execute such statements, instruments, releases and other documents and to take all other actions as may be reasonably necessary on behalf of such person

or entity to release such Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist, (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the applicable Assets, and (c) the Purchaser may seek in this Court or any other court of competent jurisdiction to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all Interests with respect to the Assets.

10. **Good Faith Purchase.** The transaction contemplated by the Purchase Agreement and this Order is undertaken by the Purchaser in good faith, as that term is used in 11 U.S.C. § 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction unless such authorization is duly stayed pending such appeal prior to the Closing.

11. **Retention of Jurisdiction**. In addition to the provisions of Article 10, Section 2 of the Purchase Agreement, this Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase Agreement, related agreements, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Purchaser; (b) interpret, implement and enforce the provisions of this Sale Order and any related order; and (c) determine any disputes or claims with respect to the Purchase Agreement and related documents.

12. **Sale Proceeds**. In accordance with the Bidding and Auction Procedures Order and the Stipulation, and subject to paragraph 13 below, the Trustee is authorized to distribute the proceeds of sale of the Assets as follows:

(a) The first proceeds of sale shall be used to pay or reserve for payment in full the following fees, costs, commissions, and expenses (collectively, the "**Sale Costs**"). The Sale Costs shall be paid *pari passu* with each other:

(i) commissions and expenses of Streambank, LLC, subject to prior Bankruptcy Court approval and the *Order Approving the Employment of Streambank, LLC to Provide Marketing, Disposition and Other Services to the Interim Chapter 7 Trustee*, entered May 20, 2011;

(iii) applicable taxes, if any;

(iv) the Trustee's commissions earned under Bankruptcy Code section 326, subject to prior Bankruptcy Court approval;

(v) the reasonable fees and expenses of Meyer, Suozzi, English & Klein, P.C., attorneys for the Trustee, incurred in connection with the sale subject to prior Bankruptcy Court Approval and the *Order Approving Retention of General Counsel*, entered March 24, 2010; and

(vi) all other reasonable and customary costs of sale.

(b) Sale proceeds, if any, remaining after payment in full of Sale Costs, shall be paid to TD Bank (the "**TD Bank Distribution**") until the TD Bank Claim is paid in full to the extent it is an allowed secured claim against the Debtors' Estates, following application on notice to creditors, including the City of New York, by TD Bank for allowance of such claim; and

(c) Sale proceeds, if any, remaining after payment in full of the Sale Costs and the TD Bank Distribution shall be paid 25% to the City of New York (with the Trustee retaining the remaining 75% for the benefit of the Debtors' Estates and creditors).

13. TD Bank's lien on the sale proceeds shall be subject and subordinate to the prior payment in full of the Sale Costs (the "**Carve-Out**").

14. Subject and subordinate in all respects to the Carve-Out, any and all valid and perfected Interests in the Assets of the Estates shall attach to any proceeds of the sale of such Assets immediately upon receipt of such proceeds by the Estates in the order of priority, and with the same validity, force and effect which they now have against such Assets, subject to any rights, claims and defenses the Debtors, the Debtors' Estates or the Trustee, as applicable, may

possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Sale Order.

15. **No Material Modifications**.  The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the Purchaser and the Trustee without further order of the Court, *provided* that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement or modify the express terms of this Sale Order and is filed on the docket.

16. **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

17. **Severability**.  The provisions of this Sale Order are nonseverable and mutually dependent.

18. **Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Estates without further order of the Court only to the extent necessary to allow the Purchaser to (a) give the Trustee any notice provided for in the Purchase Agreement, and (b) take any and all actions permitted by the Purchase Agreement and related agreements in accordance with the terms and conditions thereof.

19. **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in approving the Sale Transaction and the Trustee and the Purchaser intend to close the Sale Transaction as soon as practicable.

20. **Inconsistencies.**  In the event there are any inconsistencies between the Purchase Agreement and this Order, the terms of the Order shall control.

Dated: New York, New York
September 27, 2011

            */s/ Allan L. Gropper*
            HONORABLE ALLAN L. GROPPER
            UNITED STATES BANKRUPTCY JUDGE